638 A.2d 464

**HOGAN, LEPORE & HOGAN, Appellants,**

v.

**PEQUEA TOWNSHIP ZONING BOARD.**

**TOWNSHIP OF PEQUEA**

v.

**PEQUEA TOWNSHIP ZONING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1993.

Decided Feb. 28, 1994.

284

Charles E. Zaleski, for appellant.

David E. Wagenseller, for appellee.

William C. Crosswell, Tp. Sol., for appellee, Pequea Tp.

Before CRAIG, President Judge, SMITH, J., and KELTON, Senior Judge.

KELTON, Senior Judge.

Hogan, Lepore and Hogan (Hogan) appeal from the April 27, 1993 decision of the Court of Common Pleas of Lancaster County (trial court) which affirmed the October 28, 1991 decision of the Pequea Township Zoning Hearing Board (Board). In its decision the Board denied Hogan's application for a special exception to use its property as a quarry. The trial court also dismissed Pequea Township's (Township's) appeal from an alleged deemed decision of the Board and found that no such deemed approval of the special exception occurred. Hogan appeals both aspects of the decision.

This case raises two issues. First, did a deemed approval of the special exception application occur when the Board heard oral argument on September 19, 1991 and then issued a written opinion within 45 days of that date, but more than 45 days after the last evidentiary hearing? Second, is there substantial evidence to support the Board's decision to deny Hogan's application for a special exception? We find that no deemed approval of the special exception application occurred and that there was sufficient evidence to support the Board's denial of the special exception application. Therefore, we affirm the trial court's order.

### *Background*

Hogan is the equitable owner of land in an agricultural district of Lancaster County. The land is currently used as a fruit orchard. The land is bisected by a stream called Stehman Run and contains wetlands. Furthermore, the property is surrounded by lands containing dwellings, the New Danville Mennonite School, the Gospel Revival Ministers Church and farms. The Township contends that this area constitutes the largest contiguous area of prime agricultural land in Pequea Township. (Supp.R.R. 103b.) Hogan wants to use the land for an open-pit mining and quarrying operation. The mining

operation would consist of two pits which would be separated by Stehman Run.

At the time Hogan filed its application, quarries were permitted by special exception in that district under Section 501 of the Pequea Township Zoning Ordinance. On October 24, 1990, after Hogan's application was filed, the Township amended the ordinance to eliminate quarries as a permitted use in Ordinance No. 85.

The Board held twenty-six evidentiary hearings between January 30, 1990 and July 23, 1991. Both the Township and Hogan were represented by counsel. Both the Township and Hogan presented extensive testimony by expert witnesses. Hogan submitted revised plans for the quarry in February 1990 and May 1991. At the July 23, 1991 hearing, after consultation with the parties, and with no objections noted, the Board established September 19, September 30, October 17, and October 28, 1991 as dates for additional hearings, if necessary. At the end of the hearing on July 23, 1991, the Board closed the record and indicated that oral argument would be held on the next hearing date selected by the parties: September 19, 1991. Hogan did not object on the record to the setting of this date for oral argument.

The Township filed proposed Conclusions of Law and its memorandum of law on September 3, 1991. It filed its proposed Findings of Fact on September 19, 1991. On September 6, 1991, exactly forty-five days after the July 23, 1991 hearing, Hogan submitted its proposed Findings of Fact and Conclusions of Law. Then, by letter dated September 13, 1991, Hogan notified all parties that it believed a deemed approval of the application had been rendered as a result of the Board failing to issue a decision forty-five days after the July 23, 1991 hearing. Regardless of this notification, the Board heard oral argument on September 19, 1991. Hogan did not attend. On October 28, 1991, the Board rendered a written decision denying the special exception. The Township had filed a precautionary appeal from the alleged deemed decision of the Board on October 2, 1991. Hogan appealed the Board's decision.

On April 27, 1993, the trial court rendered a written order, wherein it determined that no deemed approval had occurred. The trial court also affirmed the written decision of the Board to deny the special exception application. Hogan appealed the decision to this Court.

## *Discussion*

■ In zoning cases, where, as here, the trial court did not receive any additional evidence, our scope of review is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Patricca v. Zoning Board of Adjustment*, 527 Pa. 267, 590 A.2d 744 (1991); *A.R.E. Lehigh Valley Partners v. Zoning Hearing Board*, 139 Pa.Commonwealth Ct. 361, 590 A.2d 842 (1991).

### *A. Deemed Approval of Application*

■ We first address the issue of whether Hogan received a deemed approval of its application for a special exception based on the failure of the Board to render a written decision within forty-five days of the July 23, 1991 hearing. Hogan contends that Section 908(9) of the Municipalities Planning Code (MPC) requires that the Board render its written decision within forty-five days of the most recent hearing.[1] Hogan argues that the September 19, 1991 hearing was unnecessary for a determination of the application. Since Hogan did not grant the Board an extension of the 45–day time period, Hogan argues that the failure to render a written decision within that time period after the last hearing created a deemed approval of the application.

1. The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within forty-five days after the last hearing before the board or hearing officer ... Where the board fails to render the decision within the period required by this subsection, or fails to hold the required hearing within 60 days from the date of the applicant's request for a hearing, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time.

Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(9).

Hogan bases its argument that July 23, 1991 was the date of the last hearing on the fact that the Board closed the record of testimony on that date. To Hogan, this action signaled the end of the hearings. Hogan argues that the Board could not unilaterally reconvene the hearing and that it did not grant an extension of time for additional hearings.

Hogan relies heavily upon *South Lebanon Township Zoning Hearing Board v. Weber*, 140 Pa.Commonwealth Ct. 177, 592 A.2d 127 (1991), for the proposition that a deemed approval is required under these facts. In *Weber*, at the close of the zoning board hearing on June 7, 1989, the zoning board announced that it would deliberate and hold a meeting to announce its decision. Subsequently, the board held another hearing to reach its final decision and took additional testimony. There, we determined that the record indicated that the June 7, 1989 hearing was the final hearing and any subsequent meeting was merely to announce the decision of the board. We concluded that "after ending hearings and announcing a decision date, a board cannot postpone the 45–day period commencement by an attempt to revive the hearing process with a later announcement." *Weber*, 140 Pa.Commonwealth Ct. at 183, 592 A.2d at 130.

We distinguish *Weber* from the facts in this case. In *Weber*, we found that the June 7, 1989 hearing was the final hearing and the board would only meet again after deliberation and to announce a decision. In the present case, the parties agreed to dates for subsequent hearings should they become necessary. Further, at the end of the July 23, 1991 hearing, the Board announced that on the next date selected for a hearing, September 19, 1991, the parties would be given an opportunity to make oral arguments. In view of the extensive record, the number of prior hearings, the complexity of some of the factual and legal issues involved, we conclude that the Board did not abuse its discretion, in fixing a separate hearing, solely for the purpose of considering the legal arguments of the parties and the summations of counsel.

■ Section 908(5) of the MPC contemplates parties making oral argument at hearings before zoning hearing boards. That section states that "[t]he parties shall have the opportunity to be represented by counsel and shall be afforded the opportunity to respond and present evidence and *argument* and cross-examine adverse witnesses on all relevant issues." (Emphasis added.) In *Gaster v. Township of Nether Providence*, 124 Pa.Commonwealth Ct. 595, 556 A.2d 947 (1989), this Court affirmed the Court of Common Pleas of Delaware County which held that Section 908(9) of the MPC does not limit the term "hearing" to proceedings where the board receives substantive evidence. The term "hearing" also includes sessions scheduled for the purpose of hearing oral argument.

■ Hogan argues that *Gaster* is distinguishable because there, according to Hogan, we relied upon the fact that the parties expressly agreed to keep the record open while here the record of testimony was closed at the July 23, 1991 hearing. However, whether the record was open or closed for receipt of evidence is not the determining factor. In both that case and this one, the board set a date for oral argument and this Court held in *Gaster* that oral argument constitutes a hearing for Section 908(9) purposes. We hold that *Gaster* applies to the present facts.

■ We further find that Hogan waived its right to a deemed approval. At the beginning of the hearing on July 23, 1991, Hogan did not object to September 19, 1991 as a date for an additional hearing, should one be required. (July 23, 1991 Hearing, N.T. 2558).[2] Further, after the close of testimony on July 23, 1991, the Board set September 19, 1991 as the date for oral argument.

Hogan did not then object to September 19 as a date for oral argument. It did, however, expressly refuse to grant the Board an extension to the 45–day period in which to issue a

2. MR. WAGENSELLER [Zoning Board Counsel]: Back on the record and before Mr. Zaleski asks his next question, the board has advised me that we will reserve the following time for 7:00 for further hearings in this matter: September 19, 1991, September 30, 1991, October 17, 1991 and if necessary, October 28, 1991, if necessary.

written decision *after* the last hearing. At that point the last hearing had been set for September 19, when oral argument was to be heard.[3]

Hogan then filed proposed Findings of Fact and Conclusions of Law on September 6, 1991. It was not until its letter dated September 13, 1991 that Hogan alleged a deemed approval had occurred.

We hold: 1) that the Board's decision dated October 28 1991 was rendered within 45 days of September 19, 1991, the date of the last "hearing" and 2) that even if Hogan otherwise would have been entitled to a deemed approval of its special exception application, it waived its right to that deemed approval by failing to object to the previously announced argument date.

3. [TOWNSHIP COUNSEL]:

Although the testimony has been closed, as I understand it, the board will be receiving oral argument and receive written argument concerning the issues in this case on the 19th of September and at least in my view and in at least the opinion of one court, the hearings are not concluded until such time as that argument has been presented.

Therefore, the 45 day time period within which the board has to reach a decision does not begin to run until at least September 19 and does not begin to run as of this evening because I would feel, I'm sure the township would feel greatly aggrieved if by some reason Mr. Zaleski [Hogan's counsel] were to assert that the 45 day period had expired before the September 19th oral arguments and therefore he had deemed approval of his application.

I don't believe he would make such an argument but for the record, I think it would be good to hear Mr. Zaleski agree that for purposes of the 45 day rule that does not begin to run until all the proceedings before this court have been concluded including any oral argument that is to be received by the board.

MR. WAGENSELLER: That would be my understanding of the law.

MR. ZALESKI: I guess my only concern is does the board know when they anticipate making a decision? For example, could we have a decision by that hearing scheduled for the 30th of September?

Following these comments, there was additional discussion about how soon after September 19, 1991, the Board could render its decision. Hogan's counsel stated that he had "no problem with [the parties and various objectors] having the opportunity to make argument but if we don't get a decision promptly and I certainly think a month is an appropriate time then I am not going to grant an extension to the 19th of September." *See* R.R. 188a–189a.

Because we have decided that no deemed approval had occurred, we need not discuss the parties' arguments concerning the scope of review in deemed approval appeals.

## B. Denial of the Special Exception

■ At the time that Hogan filed its application with the Board, quarries were, by special exception, a permitted use in the Agricultural District under Section 501 of the Pequea Township Zoning Ordinance. Judge Stengal's well-reasoned opinion accurately analyzed the law on special exceptions as follows. A special exception is not an exception to the zoning ordinance but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board,* 139 Pa.Commonwealth Ct. 206, 590 A.2d 65 (1991). However, the courts have indicated that special exception uses "are made available as a *privilege,* not as a right...." *Omiridis v. Zoning Hearing Board of the City of Chester,* 110 Pa.Commonwealth Ct. 247, 251, 531 A.2d 1196, 1198 (1987) (quoting *Blair v. Board of Adjustment,* 403 Pa. 105, 106, 169 A.2d 49, 50 (1961) (Emphasis in the original)).

■ It is well settled that an applicant seeking a special exception bears the burden of presenting evidence which will persuade the board that the application complies with all of the *objective* requirements contained in the ordinance. *Lafayette College v. Zoning Hearing Board of the City of Easton,* 138 Pa.Commonwealth Ct. 579, 588 A.2d 1323 (1991); *Bray v. Zoning Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980). Once the applicant has met his or her burden of proving that the proposed use meets the specific and objective requirements for a special exception under the zoning ordinance, the burden of proof then shifts to the objectors to the application to present evidence and persuade the zoning hearing board that the proposed use would have a generally detrimental effect on public health, safety and welfare or will conflict with the expressions of general policy contained in the ordinance. *East Manchester Township Zon-*

*ing Hearing Board v. Dallmeyer,* 147 Pa.Commonwealth Ct. 671, 609 A.2d 604 (1992).

Hogan contends that it met its burden of proving that its application met all of the specific and objective requirements for a special exception to operate a quarry in the Agriculture District. Hogan argues that those specific provisions the Board found it violated were invalid because they were preempted by a state statute. Further, Hogan argues that the Board improperly disregarded competent evidence which supported the approval of its application.

The Board found, and the Township continues to argue, that Hogan did not meet all of the requirements and that, in fact, its application was in violation of several provisions of the zoning ordinance. In addition, the Township argues in the alternative that, if we find that Hogan did meet all of the specific and objective requirements of the zoning ordinance, then the Township met its burden of proving that the special use would adversely affect the health, safety and welfare of the community and would conflict with the general policy of the ordinance. We address the arguments in turn.

### 1. The Preemption Argument

The Township argued that Hogan did not meet the requirements of the zoning ordinance. Among the applicable objective requirements contained in the Pequea Township Ordinance are those found in Section 1903 for special exceptions and Section 1913 concerning quarries and mines. In rejecting Hogan's application for a special exception, the Board concluded that Hogan had failed to satisfy six of the specific requirements of Section 1903 and ten of the specific requirements of Section 1913 of the ordinance. (Conclusions of Law Nos. 7 and 10.)

Hogan argues that the Board has no authority over such areas as the operational aspects of the quarry and its phasing; air and water pollution; blasting; noise; reclamation plans and uses; groundwater and surface water flows and supplies; wetlands; storm water management; erosion and

sedimentation control; alternative water supplies; and highway access and traffic safety on State highways. Hogan contends that these requirements of the zoning ordinance which the Board said it violated are expressly preempted by the Noncoal Surface Mining Conservation and Reclamation Act (N–SMCRA) [4] and regulations promulgated under the N–SMCRA which pertain to the operation of surface mines. We disagree.

Section 16 of the N–SMCRA, provides as follows:

Except with respect to ordinances adopted pursuant to the act of July 31, 1968, . . . known as the Pennsylvania Municipalities Planning Code [MPC], all local ordinances and enactments purporting to regulate surface mining are hereby *superseded.* The Commonwealth, by this enactment, hereby *preempts* the regulation of surface mining as herein defined.

52 P.S. § 3316 (Emphasis added).

A recent Commonwealth Court case addressed this issue. In *Warner Company v. Zoning Hearing Board,* 148 Pa.Commonwealth Ct. 609, 612 A.2d 578 (1992), *petition for allowance of appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993), we stated that the N–SMCRA confers on the Commonwealth authority to regulate surface mining activities. In that case, this Court reviewed the decision of the Pennsylvania Supreme Court in *Miller & Son Paving Inc. v. Wrightstown,* 499 Pa. 80, 451 A.2d 1002 (1982), wherein the Supreme Court distinguished and explained the meanings of the terms "superseded" and "preempted".[5]

The term 'superseded,' contained in the first sentence of section 17, ordinarily refers to the displacement of some-

---

**4.** Act of December 19, 1984, P.L. 1093, 52 P.S. §§ 3301–3326.

**5.** In *Miller,* the Supreme Court interpreted Section 17 of the Surface Mining Conservation and Reclamation Act, Act of November 30, 1971, P.L. 554, 52 P.S. § 1396.17, which contained language almost identical to the language of Section 3316 of the N–SMRCA:

Except with respect to Zoning Ordinances, all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining operations herein defined.

thing that already exists, not something that may come into existence. Thus the first sentence of section 17 reflects a legislative intent to displace all local regulations relating to surface mining which were in existence as of the effective date of the [Surface Mining Conservation and Reclamation] Act ..., except for zoning ordinances.

. . . .

Under the Statutory Construction Act of 1972, '[w]ords and phrases shall be construed according to their common and approved usage....' 1 Pa.C.S. § 1921(a). Additionally '[e]very statute shall be construed, if possible, to give effect to all its provisions.' 1 Pa.C.S. § 1921(a). These considerations require the conclusion that the second sentence of section 17 was not designed to invalidate local measures relating to surface mining operations which were, as here, enacted before the effective date of the Act of 1971. The term 'preempts,' contained in the second sentence of section 17, ordinarily refers to an act which precludes action on the same subject by another in the future. No rule of logic or syntax permits the construction that the Legislature's pre-emption of future regulation affects zoning ordinances which were in existence on the effective date of the Act and thus are specifically preserved from supersession. Such a construction would render the exception clause contained in the first sentence of section 17 a nullity and would render the remainder of the first sentence mere surplusage.

*Miller,* 499 Pa. at 86, 87, 451 A.2d at 1005.

An ordinance promulgated under the MPC is not superseded under the first sentence of Section 16. In contrast, any local ordinance, even a township zoning ordinance or an amendment to a zoning ordinance which became effective *after* the effective date of the N–SMCRA, is preempted under the second sentence of Section 16. Such an ordinance enacted under the MPC *before* the N–SMCRA, however, is neither preempted nor superseded. The Pequea Township Zoning Ordinance was adopted in 1980. The N–SMCRA was enacted on December 18, 1984.

*Miller* involved a set of circumstances similar to those in this case. The Surface Mining Conservation and Reclamation Act (SMCRA) at issue in *Miller* had an effective date of January 1, 1972. The challenged ordinance had been in effect since December 18, 1971. Since the SMCRA specifically excluded zoning variances from supersession and the effective date of the ordinance predated the SMRCA, the SMRCA neither superseded nor preempted the ordinance.

*Pennsylvania Coal Company v. Township of Conemaugh,* 149 Pa.Commonwealth Ct. 22, 612 A.2d 1090 (1992), *petition for allowance of appeal denied,* 533 Pa. 626, 620 A.2d 492 (1993), relied on by Hogan, is distinguishable from this case because the challenged provisions of the zoning ordinance at issue in that case were adopted on January 2, 1991, after the effective date of the N–SMRCA. Therefore, the N–SMRCA preempted the challenged provisions and they were found to be invalid. In *Warner,* the challenged provisions were adopted in December, 1989, after the 1984 effective date of the N–SMRCA. Therefore, the N–SMRCA preempted the challenged provisions if, as found by the Court, they improperly regulated the operation of surface mining.

In this case, because the Pequea Township Zoning Ordinance was promulgated under the MPC, the N–SMRCA does not *supersede* the zoning ordinance. Further, the zoning ordinance is not *preempted* because it became effective in 1980, before the December 19, 1984 effective date of the N–SMRCA. We find that under the facts of this case, the challenged ordinance is neither superseded nor preempted by the N–SMRCA.

### 2. Did the Board wrongfully disregard competent evidence?

Hogan further argues that it met all of the specific objective criteria of the zoning ordinance and that the Board wrongfully denied the special exception. Specifically, Hogan argues that it supplied competent witnesses who testified that Hogan complied with the specific objective criteria of the zoning

ordinance and that the Board capriciously disregarded that competent testimony.

The Board as the fact-finder in this case, however, found that Hogan's witnesses were not credible. The Board found the Township's witnesses to be more credible. This is the prerogative of the fact-finder. *Vanguard Cellular Systems v. Zoning Hearing Board of Smithfield Township,* 130 Pa.Commonwealth Ct. 371, 380, 568 A.2d 703, 707 (1989), *petition for allowance of appeal denied,* 527 Pa. 620, 590 A.2d 760 (1990) (citations omitted).

The trial court found, and we agree, that there is substantial evidence in the record to support the Board's Findings of Fact and Conclusions of Law in denying Hogan's application for a special exception.

### 3. Health, Safety and Welfare

When an application for a special exception conforms to the zoning ordinance, but health, safety and welfare questions exist, the special exception may be denied. In *Amerikohl Mining, Inc. v. Zoning Hearing Board of Wharton Township,* 142 Pa.Commonwealth Ct. 249, 597 A.2d 219 (1991), *petition for allowance of appeal denied,* 529 Pa. 652, 602 A.2d 861 (1992), this Court upheld a denial of a special exception to a landowner who wanted to operate a surface mine on the property. There, as here, the zoning hearing board made findings of fact concerning the effect of traffic, noise levels, blasting, air and water pollution. The ordinance provisions relied upon by the board were plainly general standards requiring special exception uses to "not adversely affect the character of the District ... nor the health and safety of residents or workers on adjacent properties." The ordinance provisions further required that the special exception use be in harmony with the general purposes and intent of the zoning ordinance.

In affirming the denial of the requested special exception, the court stated:

It is clear that Section 908 of the Ordinance authorizes the issuance of a special exception only when the health and safety of residents on adjacent properties will not be adversely affected. The Board in this case found that the proposed use would have such an adverse impact. Because the Ordinance specifically requires consideration of the impact upon adjacent properties and the neighborhood in general (which may in fact, as here, be located in a different zoning district), we hold that the Board had the authority to consider the impact of the *location* of a use permitted by special exception within a permitted district on adjacent areas ... [W]e therefore conclude, on the facts of this case, that the Board did not err in denying a special exception to Amerikohl because of the effects of a hazardous use on *contiguous residential community.*

. . . .

A review of the record reveals substantial evidence to support the findings Amerikohl challenges.

. . . .

In its findings of fact, the board reviewed the testimony of [the objectors'] witnesses and those of Amerikohl and found the witnesses for the objectors to be credible. Determinations as to the credibility of witnesses and the weight to be given to evidence are matters left solely to the Board in the performance of its fact-finding role.

*Amerikohl,* 142 Pa.Commonwealth Ct. at 261–63, 597 A.2d at 224–25. (Emphasis in original; citations omitted).

Section 503 of the Pequea Township Zoning Ordinance[6] provides that the primary purposes of the Agricultural District "are to protect and stabilize agriculture in areas of productive soils ... and to permit with limited exceptions only those land uses and activities which are agricultural in nature, to encourage the preservation of the most productive farmland within the Township as a valuable resource...." Also, Sec-

6. Ordinance No. 73, enacted on October 6, 1988.

tion 1900 of the Zoning Ordinance provides that the Board will review applications for special exceptions to satisfy itself that all specific requirements have been met and that the application meets "any other requirements necessary to fulfill the objectives of this Zoning Ordinance." The stated purpose of the Zoning Ordinance is to promote "the health, safety, morals and general welfare of the people." Pequea Township Zoning Ordinance, Section 101.

 A number of health, safety and welfare issues were brought before the Board in this case. The Board concluded that Hogan failed to adequately respond to these issues. These issues included concerns over truck volume and traffic safety, air pollution, impairment of the water source for nearby farms, the impact of blasting and fly rock, and noise levels. These concerns were heightened by the existence of a school adjacent to the proposed quarry location.

The effect of a proposed quarry upon water supplies in the vicinity presented a significant issue in this case. The residential dwellings and institutions of the surrounding properties receive their water supply from on-lot wells. The Township presented extensive testimony relating to the effect of the proposed quarry on groundwater supplies and wetlands. The Board found the Township's hydrogeology expert, James Knight, to be very credible on the question of the effect of the quarry on the surrounding properties.

Mr. Knight testified that "it is a virtual certainty that some wells would be adversely affected." (Supp.R.R. 81b.) He further testified that "[t]here is going to be a significant amount of dewatering around this quarry" (Supp.R.R. 270b.), and there will be "wells that will have their supply diminished and/or dried up." (Supp.R.R. 84b.)

In regard to the effect the quarry will have on the wetlands, Mr. Knight stated that "[i]n my opinion, with a high degree of probability, the wetlands that are shown will be adversely impacted to the extent that they will be partially or totally dried up and cease to exist as wetlands to the extent that they presently exist." (Supp.R.R. 82b.)

The trial court found that the Township presented substantial evidence concerning the adverse impact of the proposed quarry and substantial evidence as to the fact that quarrying on this particular property will have a greater adverse impact than quarrying elsewhere in the Township. The Board's Findings and Conclusions reflect this. A review of the record supports this finding of substantial evidence. Following *Amerikohl,* we find that the Township met its burden of proving that the presence of a quarry on Hogan's property would adversely affect the health, safety and welfare of the community. Therefore, we affirm the order of the trial court which affirmed the decision of the Board to deny Hogan's application for a special exception.

For the reasons stated above, we affirm.

## ORDER

**AND NOW,** this 28th day of February, 1994, the orders of the Court of Common Pleas of Lancaster County at Nos. 4455 and 5300 dated April 27, 1993 are hereby affirmed.