John SCOTT, Appellant

v.

CITY OF PHILADELPHIA, ZONING BOARD OF ADJUSTMENT and FT Holdings L.P.

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2013.

Decided March 21, 2014.

Reargument Denied May 8, 2014.

Matthew J. Wolfe, Philadelphia, for appellant.

Daniel P. McElhatton, Philadelphia, for appellee FT Holdings L.P.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge McGINLEY.

John Scott (Scott) appeals the order of the Court of Common Pleas of Philadelphia County (common pleas court) that granted FT Holdings LP's (FT) motion and quashed Scott's appeal and dismissed Scott's appeal with prejudice.

FT developed a condominium complex located at East Thompson and Columbia Avenue in the City of Philadelphia. On March 9, 2012, FT submitted an application for Zoning/Use Registration Permit on properties it owned located at 1247 E. Columbia Avenue, 413 Moyer Street, and 415 Moyer Street in the City of Philadelphia. FT sought to relocate lot lines to consolidate and merge two lots (413 Moyer and 415 Moyer) into 1247 E. Columbia Avenue as part of a previously approved residential development, demolition of the all existing structures on 413 and 415 Moyer Street, erection of one four story residential structure containing nine residential dwelling units with accessory decks, green roofs, and bicycle storage, for a total of thirty-five residential units and one commercial unit with accessory parking for thirty-two vehicles, as previously approved.

On April 9, 2012, the City of Philadelphia, Department of Licenses and Inspections (L & I) denied the application pursuant to the Philadelphia Zoning Code (Code). The Application violated Section 14–205 of the Code because the proposed use of thirty-five dwelling units was not permitted in the Zoning District; thirty percent open area is required and the application only proposed 2.2%; a maximum height of thirty-five feet is permitted but the Application proposed forty-nine feet, four inches; and the maximum number of stories was three but the application proposed four. Further, the application violated Section 14–113 of the Code because it created a condition of multiple structures with no structure having its own front, side or rear yard which was not permitted in the Zoning District. The Application also violated Section 14–1402(1)(a) of the Code because the Code required thirty-five off-street parking spaces while the Application only proposed thirty-two.

On April 10, 2012, FT appealed the denial to the City of Philadelphia Zoning Board of Adjustment (Board) and sought variances. The Board conducted a hearing on May 2, 2012. At the hearing, FT's counsel, Peter F. Kelsen (Attorney Kelsen) explained that the Board had previously authorized the development of twenty-six residential units and that FT sought the authorization of "Phase 3" of the project. Notes of Testimony, May 2, 2012, (N.T.) at 2; Reproduced Record (R.R.) at 2a. Attorney Kelsen further explained that Phase 3 would include the construction of a four story approximately forty-nine foot tall building that would contain nine residential units. There was also provision for a "dedicated bike room for 35 bikes." N.T. at 3; R.R. at 3a. Of the nine units, six would be two bedroom and three would be one bedroom. N.T. at 4; R.R. at 4a. Attorney Kelsen also asserted that the project had the support of the Fishtown Civic Association, the Fishtown Neighbors Association, and Council President Clark. N.T. at 5–6; R.R. at 5a–6a.

Jonathan Newcomb (Attorney Newcomb), attorney for Scott, appeared at the hearing on behalf of Scott and asserted that there was a lack of notice because "[t]here was supposed to be notice posted on all frontages for 12 days up until and including today. We have evidence that there was not sufficient notice posted in a proper location, and not posted at all and taken down." N.T. at 7–8; R.R. at 7a–8a. Attorney Newcomb also stated that FT failed to demonstrate an undue hardship that would entitle it to a variance and that "[i]t's a violation of height restrictions … it's not within the character of the neighborhood. Light. There will be less light on the street for people for visibility purposes and to view the City. There will be constraints on traffic and parking." N.T. at 10; R.R. at 10a.

James Moransky (Moransky) of FT testified that the property was properly posted but the posters were torn down. N.T. at 22; R.R. at 22a.[1]

The Planning Commission indicated that it had no objection to the grant of the variances. N.T. at 26; R.R. at 26a.

The Board granted the variances and made the following conclusions of law:

9. The record before the Board, demonstrates that the literal enforcement of the Zoning Code against the Subject Property would result in an unnecessary hardship due to the physical surroundings and particular size and configuration of the Subject Property; that the proposed residential use of the Subject Property with one commercial unit will have no adverse effect on the public health, safety or general welfare; and that the variances being requested represent the minimum variances that will afford relief at the least modification possible.

10. The Applicant [FT] presented sufficient evidence demonstrating the unique nature of the Subject Property. In particular, the Applicant demonstrated that the Subject Property cannot comply with the requirements of the Zoning Code set forth in the Notice of Refusal because the Subject Property is an oddly-configured property consisting of multiple lots to be used in unity and conformity with two previously approved phases of development as evidenced by the Previously Issued Zoning Permits.

. . . .

14. The Board also determined that granting the variance would not (i) substantially or permanently injure the appropriate use of adjacent conforming properties; (ii) substantially increase congestion in the public streets; (iii) increase the danger of fire, or otherwise endanger the public safety; (iv) overcrowd the land or create an undue concentration of population; (v) impair an adequate supply of light and air to adjacent property; or (vi) adversely affect transportation or unduly burden water, sewer, school, park or other public facilities.

15. The Board concluded that the testimony, as well as other documentary evidence support the conclusion that the granting of the variances will keep the Subject Property in harmony with the spirit and purpose of the Zoning Code and will not (i) substantially or permanently injure the appropriate use of adjacent conforming property; or (ii) adversely affect the public health, safety or general welfare.

Findings of Fact and Conclusions of Law of the Philadelphia Zoning Board of Adjustment, May 17, 2012, Conclusions of Law Nos. 9–10 and 14–15 at 4–5; R.R. at 31a–32a.

Scott appealed to the common pleas court. FT praeciped to intervene.

On December 3, 2012, FT moved to quash the appeal and alleged that Scott lacked standing because he failed to establish that he was aggrieved by the Board's decision:

9. In the instant appeal, Mr. Scott did not appear before the Zoning Board, therefore he could not, and did not, offer any evidence on the impact of the proposed development on his interest. Mr. Scott did not present any evidence that his interest would be affected, let alone

---

1. Three neighboring residents testified in opposition to the project. Moransky explained changes that were made to the project in light of concerns and complaints of neighboring residents.

harmed, in any way by the proposed development.

10. In fact, Mr. Scott's actions after filing his appeal demonstrate his disinterest in the proposed development. Upon examination, Mr. Scott's actions suggest that the instant appeal was filed for Scott's pecuniary gain, not for any reason relating to the development or community.... Mr. Scott demanded monetary compensation from the developer, Intervenor F.T. Holdings L.P., in exchange for the withdrawal of Scott's appeal. Scott's focus on financial gain, rather than any effect the proposed development would have on him, his property or the surrounding community, is both improper and an abuse of the appellate process.

11. Moreover, Mr. Scott did not attend the Fishtown Neighborhood Association ('FNA') meeting regarding the project which was held in advance of the zoning hearing. That meeting, which provides a proper and appropriate forum for members of the public, like Mr. Scott, to express their opinion and comment on the project and its effect on the neighborhood, was held on April 17, 2012. The meeting was attended by 59 neighbors, none of whom were Mr. Scott, and resulted in a majority vote in favor of the project and a letter of community support. Mr. Scott did not contact the FNA prior to the meeting to raise any concerns and, similarly, took no action during the two weeks between the FNA meeting and the ZBA hearing to make his concerns known to the Applicant or the FNA.

12. During the hearing before the Zoning Board, Mr. Scott's counsel made purely legal arguments to the Board regarding the sufficiency of the posting of the zoning notice, and a generic reference to evidence of hardship. Counsel also provided a letter from Mr. Scott ...

which mirrors his counsel's testimony. Neither the testimony offered by Mr. Newcomb, nor the letter offered by Mr. Scott, address, in any way, the direct, substantial or immediate impact of the requested variances on John Scott.

13. None of the concerns raised by counsel were specific to Mr. Scott—they are, instead, general neighborhood concerns. Mr. Scott cannot offer any evidence of a negative impact imposed upon him by the proposed development because there is none. There is no direct line of sight from Mr. Scott's property to the development and his view of the City will remain unobscured. Mr. Scott also owns two vacant lots behind his home that could, if parking were a serious concern, be easily converted to that use. Finally, Mr. Scott lives at least 350 feet away (10 feet shy of the endzone to endzone distance of a football field) from the site of the proposed development, thus there cannot be any affect [sic] on the light or air surrounding his home....

. . . .

14. Mr. Scott cannot and did not present any evidence that he is an aggrieved party. On the question of the impact of the proposed development on Mr. Scott, the comments offered by counsel pertained solely to issues equally applicable to every member of the community (height, light, view and parking)—nothing was *specific* to Mr. Scott....

15. Moreover, Mr. Scott did not personally appear at the hearing, a choice that deprived counsel for the applicant the opportunity to inquire further about Mr. Scott's specific concerns, and deprived the Board of the ability to weigh Mr. Scott's testimony and evaluate the credibility of the witness. (Emphasis in

original. Citations and footnote omitted).

Motion to Quash Appeal, December 3, 2012, Paragraph Nos. 9–15 at 2–4.

Following oral argument on January 9, 2013, the common pleas court granted the motion to quash and dismissed Scott's appeal with prejudice. Scott moved for reconsideration on January 24, 2013, which the common pleas court denied on January 28, 2013. With respect to its decision to grant the motion to quash, the common pleas court reasoned:

Like the Court in *Baker [v. Zoning Hearing Board of West Goshen Township*, 27 Pa.Cmwlth. 602, 367 A.2d 819 (1976) ], this Court does not have to consider whether Appellant [Scott] had standing before the ZBA [Board]; instead this Court must determine whether Appellant [Scott] has standing in the Trial Court. Here, the record is clear that Appellee [FT] did not object to the participation of Appellant [Scott] at the hearing before the ZBA [Board].... Nevertheless the issue of standing before this Court has not been waived and could not have been waived because this is the first instance in which a challenge to standing before the Trial Court could have been brought.

. . . .

Here, Appellant [Scott] has not shown that he was aggrieved.... First, to the extent that Appellant [Scott] asserts the standard for an 'aggrieved' party enunciated in *Baker* ... this claim is without merit; both *Baker* and *Thompson [v. Zoning Hearing Board of Horsham Township*, 963 A.2d 622 (Pa.Cmwlth. 2009) ] relied on the definition of 'aggrieved' party as applied to the MPC, and not under, as relevant here, the Home Rule Act.

Second, Appellant [Scott] has not demonstrated a substantial, direct and immediate interest. Appellant [Scott], through counsel, by letter, testified at the hearing before the ZBA [Board] that he opposed the granting of the requested variance for the following reasons: F.T. failed to provide proper notice; F.T. failed to establish any undue hardship; that the proposed structure violated height restrictions; that the proposed structure did not conform to the character of the neighborhood; that there would be less light on the street; and an unsubstantiated claim that there would be traffic and parking issues.... At the hearing before this Court, Appellant [Scott], through counsel, argued that he is aggrieved because: he has to drive by the project; he lives on the same block as the project; he doesn't want to look at the project; the project is not within the character of the neighborhood, which he doesn't want to turn into Brooklyn; and that Appellee [F.T.] did not show any hardship.... Appellant [Scott] failed to establish any discernible effect that granting the variance would have on any claimed interests. Appellant [Scott] failed to demonstrate a causal connection between granting the variance and the injury to any claimed interest. Simply put, Appellant [Scott] does not want to look at Appellee's [F.T.] project. He therefore is not an aggrieved person ... and cannot be held to have standing to appeal the ZBA's [Board] decision to this Court....

. . . .

Appellant's [Scott] claims that F.T. has waived any challenge to standing must fail as standing to appeal a decision to the Courts must be established. The issue of whether Appellant [Scott] had standing before the ZBA [Board] is not before this Court. However, the issue of Appellant's [Scott] standard [sic] to

proceed before this Court is not waived. To this end, the Court properly determined that Appellant [Scott] failed to establish himself as an aggrieved person as required to have standing to appeal the Home Rule Act, as discussed in *Spahn [v. Zoning Board of Adjustment,* 602 Pa. 83, 977 A.2d 1132 (2009)]. Therefore, the Court's ruling should stand.

Common Pleas Court Opinion, March 25, 2013, at 7, 9–11; R.R. at 106a, 108a–110a.

Scott contends that the common pleas court erred when it granted FT's motion to quash because FT failed to object, question Scott's aggrieved status, or raise standing until after Scott filed his brief on the merits on appeal to the common pleas court. Scott also contends that the common pleas court erred when it determined that he did not have standing when he lived about three hundred feet away on the same street running one way toward the proposed development without any bisecting streets between and the proposed construction would physically block the view from his house.[2]

Initially, Scott contends that because he participated in the hearing before the Board in opposition to the proposed development without any objection by FT, he became an aggrieved party by the decision of the Board and was entitled to appeal by right. Scott adds that his review of the pertinent case law reveals that this Court has consistently held that it is incumbent upon the applicant to raise the issue of standing at the zoning board hearing, otherwise anyone permitted to participate in opposition before a zoning board is aggrieved by the adverse decision and has standing to appeal to the court of common pleas.

For support, Scott cites to *South of South Street Neighborhood Association v. Philadelphia Zoning Board of Adjustment,* 54 A.3d 115 (Pa.Cmwlth.2012), *petition for allowance of appeal granted in part and denied in part,* —— Pa. ——, 73 A.3d 525 (2013). In *South,* Dung Phat (Phat) owned a tract of land in the City of Philadelphia that occupied all but one corner of the city block that was bounded by Washington Avenue, 24th Street, Carpenter Street, and 23rd Street (Phat Property). The Phat Property was located in a G–2 Industrial zoning district and consisted of 138,866 square feet. A vacant industrial building with a footprint of 94,894 square feet was located on the Phat Property. The remainder of the block was zoned R–10A Residential district with residential uses. Along 23rd Street, 24th Street, and Carpenter Street, the properties were used for residences and an assisted living facility. Washington Street had industrial and commercial uses. *South,* 54 A.3d at 118.

On October 9, 2008, Phat submitted an application to L & I for a zoning/use registration permit for the Phat Property. Phat sought approval for consolidation of the three lots which comprised the Phat Property, creation of individual tenant spaces for a variety of wholesale and resale uses, including uses permitted in C–2 Commercial zoning districts, an accessory parking lot scheduled to contain 119 spaces with six spaces for physically handicapped drivers/patrons, and structural changes, including second story additions to the existing building, dormers, and a forty-eight

---

**2.** In zoning cases where, as here, the common pleas court did not receive any additional evidence, our review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discre-

tion. *Hogan, Lepore & Hogan v. Pequea Township Zoning Board,* 162 Pa.Cmwlth. 282, 638 A.2d 464, *petition for allowance of appeal denied,* 538 Pa. 651, 647 A.2d 905 (1994).

foot high clock tower. L & I denied the application because the proposed uses were not permitted in G–2 Industrial districts and the proposed accessory parking uses did not meet the dimensional requirements contained in the Philadelphia Zoning Code. *South,* 54 A.3d at 118.

Phat appealed to the Board. The Board conducted a hearing on March 11, 2009. The Board granted the variances subject to certain conditions. In response to a letter from counsel for the South of South Street Neighborhood Association, Kevin Broad, Patrick Borkowski, Nicole Flaquer, and Wei Jing Lei (collectively, South), the Board reconsidered its decision and held two additional hearings. On January 12, 2010, the Board issued a new decision and granted Phat the variances he requested subject to the condition that Phat had to keep a four foot wall in front of the parking lot, Phat had to use a trash enclosure as part of the building and all deliveries and trash pickup would be conducted from inside the parking lot and not from Carpenter Street, 23rd Street, or 24th Street. The Board determined that Phat proved the existence of an unnecessary hardship and that the grant of the requested relief would not substantially affect adjoining landowners or the general public in an adverse manner. South appealed to the Court of Common Pleas of Philadelphia County which affirmed. *South,* 54 A.3d at 118–119.

South appealed to this Court. Phat asserted in its brief that South lacked standing and that this Court should reject the appeal. This Court determined that South had standing:

In *Thompson v. Zoning Hearing Board of Horsham Township,* 963 A.2d 622 (Pa.Cmwlth.2009), we rejected a standing challenge in an appeal where a trial court concluded that a party could not raise an objection to an opponent's

standing when the party whose standing was questioned participated before the zoning hearing board without objection. We concluded that a party is 'necessarily … aggrieved by' a zoning hearing board's 'adverse decision and standing to appeal that decision to the trial court.' … Moreover, a challenge to standing is not one that is jurisdictional in nature.… Consequently, because the Association participated in the proceeding before the ZBA [Board], without objection from Dung Phat, we conclude that the Association has standing. Therefore, we will proceed to discuss the merits of the issues the Association has raised in its appeal. (Citations omitted).

*South,* 54 A.3d at 119–120.

Further, Scott argues that this Court has held that the issue of standing must be raised at the earliest possible moment in the litigation. In *Thompson v. Zoning Hearing Board of Horsham Township,* 963 A.2d 622 (Pa.Cmwlth.2009), Labrepco Ventures, L.P. (Labrepco) owned property in the I–2 Industrial District and the Airport Crash & Noise Overlay District/Accident Potential Zone 1 (ACNOD) of Horsham Township. Labrepco applied for a use variance to allow the construction of two, two story buildings in the ACNOD and a dimensional variance to allow a forty-three foot buffer along the residentially-zoned land adjacent to the property rather than the fifty foot buffer stated in the zoning ordinance. *Thompson,* 963 A.2d at 623–624.

The Zoning Hearing Board of Horsham Township (ZHB) held a hearing on the variance requests. Edwin R. Thompson (Thompson) appeared at the hearing and objected on the basis that office buildings were not a permitted use in the ACNOD. The ZHB granted party status to Thompson. Labrepco did not object. The ZHB granted the variances. Thompson appeal-

ed to the Court of Common Pleas of Montgomery County. Labrepco moved to quash the appeal on the basis that Thompson lacked standing to appeal because he was not aggrieved. The Court of Common Pleas of Montgomery County denied the motion and found that Labrepco waived any challenge to standing by failing to object to Thompson's grant of party status before the ZHB. *Thompson*, 963 A.2d at 624.

> On appeal, this Court affirmed:
> Like the trial court, we conclude that the situation here is analogous to that in *Baker [v. Zoning Hearing Board*, 27 Pa.Cmwlth. 602, 367 A.2d 819 (1976)]. In *Baker*, as here, a resident of the township appeared before the zoning hearing board in opposition to a landowner's application, and the landowner did not object to the resident appearing or becoming a party to the proceedings. As in the present case, the zoning hearing board granted the requested relief, and when the resident appealed to the trial court, the landowner asserted that the resident was not a party aggrieved and, therefore, lacked standing to appeal the zoning hearing board's decision. The trial court agreed and dismissed her appeal. In reversing, our court reasoned that because the resident appeared and participated as a party before the zoning hearing board without objection by the landowner, she neces-

sarily was aggrieved by the adverse decision and had standing to appeal that decision.... Applying Baker, we conclude that because Thompson appeared and participated as a party before the ZHB without objection by the Landowner [Labrepco], he necessarily is aggrieved by the ZHB's adverse decision and has standing to appeal that decision to the trial court.... (Footnotes and citation omitted).

*Thompson*, 963 A.2d at 624–625.[3]

While these two cases certainly support the position of Scott, FT argues that it raised the issue of standing at the proper time because standing to appear before the Board is different than standing to appeal a decision of the Board to the common pleas court. For support, FT relies on *Spahn v. Zoning Board of Adjustment*, 602 Pa. 83, 977 A.2d 1132 (2009). The issues in *Spahn* centered on whether the newly enacted Section 17.1 of the First Class City Home Rule Act[4], 53 P.S. § 13131.1,[5] removed general taxpayer standing from the Code, whether the enactment of Section 17.1 violated the single subject rule of the Pennsylvania Constitution, and whether the appellants in *Spahn* had standing to pursue zoning challenges under traditional notions of standing.

Three separate cases were consolidated before our Pennsylvania Supreme Court. The Supreme Court held that general tax-

---

3. Unlike the present case and South, *Thompson* was not governed by the Code but by the Pennsylvania Municipalities Planning Code, Act of July 31, 1968 P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

4. Act of April 21, 1949, P.L. 65. This Section was added by the Act of November 30, 2004, P.L. 1523.

5. Section 17.1 provides:
   In addition to any aggrieved person, the governing body vested with legislative pow-

ers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development.

payer standing was removed from the Philadelphia City Code, the enactment of Section 17.1 did not violate the single subject rule of the Pennsylvania Constitution, and that in order to have standing in City of Philadelphia zoning matters, a party must be "aggrieved" as that term was defined in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). In *William Penn*, the Pennsylvania Supreme Court determined that a party has standing if he (a) has a substantial interest in the subject matter of the litigation; (b) the interest is direct; and (c) the interest is immediate and not a remote consequence.[6]

In comparing *South* and *Spahn*, it appears that *South* is more analogous to the present case. In *South*, this Court held that a party's failure to object to standing before the Board resulted in a waiver of the ability to raise standing as an issue before the common pleas court. Factually, the present matter is very much like the factual situation in *South*. In both cases no objection was made to a party's appearance before the Board and the issue of standing was raised later, on appeal. On the other hand, the Supreme Court in *Spahn* analyzed the effect of the enactment of Section 17.1 with respect to standing in appeals from the Board. *Spahn* did not decide when the issue of standing must be raised. Following *South*, this Court determines that FT waived the issue of

standing when it did not raise it before the Board.[7]

Accordingly, this Court reverses and remands to the common pleas court for consideration of the merits of the appeal.

### *ORDER*

AND NOW, this 21st day of March, 2014, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed and this case is remanded to the Court of Common Pleas of Philadelphia County for consideration of the merits of John Scott's appeal.

---

**6.** In one of the consolidated cases, the Society Created to Reduce Urban Blight (SCRUB) opposed the request for variances to allow for the construction of a 2,400 square foot illuminated sign. The developer objected to SCRUB's appearance at hearings conducted by the Board. The Board granted the variances. Before the Court of Common Pleas of Philadelphia County, the developer moved to quash the appeal of SCRUB on the basis that it lacked standing under Section 17.1. The motion to quash was granted. On appeal to this Court, SCRUB argued that it had standing because it was present and participated in

hearings before the Board. This Court discounted that argument among others and affirmed. Our Pennsylvania Supreme Court then heard the case as part of the consolidated appeals. *Spahn*, 602 Pa. at 95–96, 977 A.2d at 1139–1140.

**7.** Scott also contends that he is an "aggrieved" party and has standing on that basis. Because this Court determines that FT waived the issue of standing, this Court need not address this issue.