# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heisler's Egg Farm, Inc.,     :
             Appellant     :
                         :
       v.                 :
                         :
Walker Township Zoning Hearing     :
Board and David Bensinger and     :    No. 780 C.D. 2017
Margaret Bensinger     :    Argued: November 14, 2018

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge[1]

OPINION
BY JUDGE FIZZANO CANNON[2]        FILED: May 28, 2020

Heisler's Egg Farm, Inc. (Applicant) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court), dated May 22, 2017, that affirmed the Walker Township Zoning Hearing Board's (Board) denial of Applicant's request for a special exception to expand its existing egg farm. Upon review, we affirm, albeit on other grounds.

---

[1] This case was argued before a panel of the Court that included former Judge Robert Simpson. Because Judge Simpson's service on this Court ended December 31, 2019, this matter has been submitted on briefs to Judge Ceisler for consideration as a member of the panel.

[2] This case was reassigned to the authoring Judge on September 11, 2019.

Applicant is the owner and operator of the property known as 757 Valley Road, Tamaqua, Pennsylvania (Property). Board's Findings of Fact (F.F.) ¶ A. The Property, which comprises approximately 55.4 acres, lies in the Enhanced Agriculture Preservation (EAP) Zoning District. F.F. ¶¶ K & O. Applicant operates a chicken farm and egg production facility on the Property, which consists of approximately 140,000 laying chickens (layers). Application for Special Exception, Attachment at 1, Reproduced Record (R.R.) at 4a; *see* F.F. ¶¶ M & N(2). In addition to producing its own eggs, Applicant's facilities contain an egg wash system, which washes eggs produced on-site as well as eggs brought in by third parties and from another one of Applicant's layer facilities located in Catawissa, Pennsylvania. *See* Notes of Testimony (N.T.) 6/29/16 at 63 & 77, R.R. at 338a & 352a. The eggs are washed with water and the resulting "egg wash water" is spread onto a leach field on the Property. N.T. 6/1/16 at 49, R.R. at 177a. The facility utilizes two wells for water. N.T. 6/1/16 at 73, R.R. at 201a; *see* N.T. 6/29/16 at 39, R.R. at 314a.

Applicant seeks to expand its operations. F.F. ¶ N. Specifically, it proposes to: (1) remove its existing egg-packing building and replace it with a larger egg-processing building; (2) add two additional chicken laying barns to accommodate an increase in the number of chickens from the current 140,000 layers to a maximum of 468,000 layers;[3] (3) transfer manure from the two additional layer barns to a new manure storage building; and (4) treat egg wash water with a 26,853-

---

[3] We note that Applicant's application for special exception stated that the proposed expansion would increase the number of chickens on the Property from the current 140,000 maximum to a maximum of 328,000 layers. Zoning Application, Attachment at p. 1, R.R. at 4a. However, Applicant's President Todd Heisler testified that Applicant was proposing increasing the number to 460,000. *See* N.T. 6/29/16 at 38 & 77, R.R. at 313a & 352a. Additionally, the Board found the maximum number of layers would be 468,000, F.F. ¶ N(1), and Applicant does not dispute this finding.

gallon wash water treatment facility in accordance with its Nutrient Management Plan (NMP) prepared pursuant to the Nutrient Management Act (NMA), 3 Pa. C.S. §§501-522.  F.F. ¶ N(1-4).

Section 452.B of the Eastern Schuylkill Planning Region Zoning Ordinance (Zoning Ordinance) permits Intensive Agriculture in the EAP Zoning District subject to Section 1615 of the Zoning Ordinance.  Board Decision, Discussion ¶ B; R.R. at 15a.  Section 1615(D) of the Zoning Ordinance provides that for lands exceeding 40 acres, any Intensive Agriculture use in excess of 6.0 animal equivalent units (AEUs) per acre requires a special exception.  Board Decision, Discussion ¶ C; R.R. at 15a.  Because Applicant's proposed expansion would contain 15.79 AEUs per acre, Applicant applied for a special exception.  *See* F.F. ¶¶ B & P.  Hearings ensued before the Board.  Board Decision at p. 1[4] & F.F. ¶ C; R.R. at 9a.

Applicant presented the testimony of Matthew Hood, a professional engineer, and Ted Moncavage (Moncavage), a certified nutrient management planner; they testified regarding the proposed expansion, the NMP and Applicant's odor management plan.  F.F. ¶ G; *see generally* N.T. 6/1/16 at 16 -129, R.R. at 144a-257a; N.T. 6/29/16 at 5-34, R.R. at 280a-309a.  Applicant also presented the testimony of its President, Todd Heisler (Heisler).  F.F. ¶ F; *see generally* N.T. 6/29/16 at 34-89, R.R. at 309a-64a.  David Bensinger and Margaret Bensinger (together, Objectors), who reside and own property immediately adjacent to the Property, appeared with counsel and David Bensinger testified.  F.F. ¶ H; *see* N.T. 6/29/16 at 121 & 143, R.R. at 396a & 418a; *see generally* N.T. 6/29/16 at 121-43, R.R. at 396a-418a.  Objectors also presented the testimony of Serena A. DiMagno

_____

[4] The Board's Decision did not include page numbers.  Hence, we have supplied the necessary pagination.

3

(DiMagno) as an expert in the field of environmental regulation and compliance, with a sub-specialty in water and wastewater operation and compliance. F.F. ¶ I. Several other nearby residents also testified. *See* F.F. ¶ J; *see generally* N.T. 6/29/16 at 97-121, R.R. at 372a-96a.

Ultimately, the Board denied Applicant's special exception request. Board Decision at p. 14; R.R. at 21a. In so doing, the Board first rejected Applicant's argument that the Board lacked authority to deny Applicant's special exception request on the ground that the Zoning Ordinance was preempted by the NMA. Board Decision, Discussion ¶¶ D-I; R.R. at 15a-17a. To that end, the Board stated Applicant did not avail itself of the statutory procedure by which to challenge the Zoning Ordinance on the ground that it conflicted with the NMA,[5] and therefore, it declined to usurp the authority of the Attorney General and the court to determine whether the Zoning Ordinance is preempted by the law of this Commonwealth. *Id.* ¶ H.

In addition, the Board found that Applicant did not proffer sufficient evidence to permit the Board to determine the proposed water consumption/use rates. F.F. ¶ W(2). The Board also found that egg wash water produces foul odors and attracts flies and rodents. F.F. ¶ W(9-10). The Board concluded that Applicant's expansion of its proposed use, including the increased severity and impact of foul odors, flies and commercial truck traffic, would adversely affect: the agricultural and residential character of the community; property values in the community; and the health and safety of the residents, workers and visitors of the adjacent properties

---

[5] The Board stated, "ACRE [(the Agriculture Code, 3 Pa.C.S. §§ 101-11108)] specifically provides that '[a]n owner or operator of a normal agricultural operation may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance and to consider whether to bring legal action under section 315(a) (relating to right of action)." Board Decision, Discussion ¶ G; R.R. at 16a (quoting 3 Pa.C.S. § 314(a)).

4

and the general neighborhood. Board Decision, Discussion ¶¶ L-N; R.R. at 18a-19a. The Board also concluded that the resulting increased truck traffic would create undue congestion and hazards prejudicial to the surrounding neighborhood. *Id.* ¶ O. Additionally, the Board determined that the proposed expansion of the Intensive Agricultural use would not conflict with the direction of building development in accordance with the comprehensive plan. *Id.* ¶ P. Finally, and pertinent to our review, the Board concluded that services and utilities are available to adequately service the proposed use. *Id.* ¶ Q.

Applicant appealed to the trial court. Notice of Appeal, R.R. at 22a-26a. Without taking additional evidence, the trial court affirmed. *See* Trial Court Order dated 5/22/17 & Opinion, R.R. at 54a & 60a-72a. Applicant then appealed to this Court.[6]

On appeal,[7] Applicant makes three arguments.[8] First, it argues that the trial court erred in determining that Applicant was not entitled to a deemed approval of its application for a special exception. Applicant's Brief at 11-15. Second, Applicant argues the trial court erred in holding that the subject of flies, odors, and egg wash were relevant because those issues are governed solely by the NMA. *Id.* at 15-18. Third, Applicant argues that it satisfied all the objective requirements for

---

[6] The Board joins in Objectors' brief. Board's Letter filed 11/27/17.

[7] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the Board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640.

[8] For purposes of this opinion, the Court has combined Applicant's third and fourth issues on appeal.

a special exception set forth in Section 1615 of the Zoning Ordinance. *Id.* at 18-23. Applicant contends it was Objectors' burden to rebut the presumption that Applicant's proposed use is consistent with the health, safety and welfare of the community, and they did not do so. *Id.* at 23-27.

## I. Deemed Approval

Section 908(1.2) of the Pennsylvania Municipalities Planning Code[9] (MPC) provides, in pertinent part, "[e]ach subsequent hearing before the [Board] . . . shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record." 53 P.S. § 10908(1.2). Section 908(9) of the MPC requires that "[w]here the [Board] . . . fails to commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time." 53 P.S. § 10908(9).

Applicant agrees that the Board held hearings in this matter on June 1 and June 29, 2016. Applicant contends that, after the June 29 hearing, Section 908(1.2) of the MPC required the Board to hold the next hearing within 45 days, *i.e.*, on or before August 13, 2016. Relying on our Supreme Court's decision in *Wistuk v. Lower Mt. Bethel Township Zoning Hearing Board*, 925 A.2d 768 (Pa. 2007), Applicant asserts that the proceeding on July 25, 2016 was a meeting and not a hearing. Consequently, Applicant argues that it is entitled to a deemed approval pursuant to Section 908(1.2) of the MPC. 53 P.S. § 10908(1.2). We disagree.

Contrary to Applicant's assertion, the facts and circumstances surrounding the "hearing" in question in *Wistuk* are not analogous to those found in the instant matter. In *Wistuk*, our Supreme Court held that a meeting, on October

---

[9] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

6

22, 2003, that was scheduled solely for the purpose of "deliberation and decision" was not a "hearing" within the meaning of Section 908(1.2), as the parties did not have an "'opportunity to respond and present evidence and argument and cross-examine adverse witnesses.'" *Wistuk*, 925 A.2d at 775 (quoting Section 908(5) of the MPC, 53 P.S. § 10908(5)).

In concluding that the proceeding at issue in *Wistuk* was not a hearing, our Supreme Court relied on the following facts and circumstances. The Supreme Court noted that the board's solicitor all but stated at the prior hearing conducted on September 30, 2003 that the hearings on the matter were concluded, stating, "[w]e're going to close the record. Everybody is done. Good. Close the record." *Wistuk*, 925 A.2d at 769. The solicitor also stated that counsel for the parties could submit written legal arguments to him in lieu of oral argument and explained that the briefs would be circulated among board members and discussed on October 22, 2003, at which time the board would also reach and announce a decision. *Id.* The solicitor made clear that no new testimony or evidence of any kind would be taken at the October 22, 2003 meeting. *See id.* (quoting solicitor's statement, "when the [b]oard resumes to deliberate, it's not going to be for argument or comment for anyone; it will be for discussion and deliberation and voting[]"). The board solicitor also told participants that there was no need to be present at the later scheduled October 22 meeting, and counsel, in fact, were not present. *Id.* at 769-70 (quoting solicitor's statement, "[s]o for those of you who can't come back, you can have some assurance that there's nothing going to change about the hearing. It's going to be deliberation and voting. The record is closed."). Consistent with this, when the board reconvened on October 22, 2003, prior to the deliberations, the board solicitor reiterated that no one was to

7

speak to the board at any time, reminding those present that he had assured counsel at the last hearing that there would be no further testimony or argument. *Id.* at 770.

In analyzing whether the October 22, 2003 proceeding was a "hearing," the Supreme Court noted that the MPC defines the term "hearing" very broadly, and that a zoning hearing board must conduct hearings in accordance with requirements, to include that "[t]he parties shall . . . be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." *Wistuk*, 925 A.2d at 775. The Supreme Court noted that "none of these features was attendant to the October 22 meeting."[10] *Id.* Accordingly, the Supreme Court ruled that the September 30, 2003 meeting was "the last hearing" and that the October 22, 2003 meeting was not a hearing. *See id.*

In contrast, the July 25, 2016 proceeding at issue in the case *sub judice* was not scheduled solely for the purpose of "deliberation and decision." Rather, at the preceding hearing on June 29, 2016, the evidentiary record was left open and the hearing was continued for the purpose of taking additional testimony at the July 25, 2016 hearing. This is apparent from the transcript of the June 29, 2016 proceeding. The following exchange occurred at the beginning of Objectors' presentation of their case at the June 29, 2016 proceeding:

> [Objectors' Counsel]: As I advised counsel, we did have somewhat of a medical emergency with my expert

---

[10] In *Wistuk*, the Supreme Court agreed with Judge Friedman's dissenting opinion in *Wistuk v. Lower Mt. Bethel Township Zoning Hearing Board*, 887 A.2d 343 (Pa. Cmwlth. 2005) (Friedman, J., dissenting), *reversed*, 925 A.2d 768, 775 (Pa. 2007), that the circumstances were similar to those presented in *South Lebanon Township Zoning Hearing Board v. Weber*, 592 A.2d 127 (Pa. Cmwlth. 1991) (holding that a hearing where the zoning board said it would deliberate and hold a subsequent meeting to announce its deliberations constituted the final hearing and that the subsequent meeting to announce deliberations did not qualify as a hearing), and *Quality Food Markets, Inc. v. Zoning Hearing Board*, 413 A.2d 1168 (Pa. Cmwlth. 1980) (holding that a meeting for what the zoning board referred to as "deliberation and discussion" among the members was not a hearing).

witness who was diagnosed yesterday with shingles and is contagious and is not able to be here this evening.

So I would ask that we be afforded an opportunity to call Ms. Serena DiMagno at a later date, which I understand that we will probably be taking - - ask that we take some witnesses out of order for a little bit due to her illness, which precluded her from being here today.

[Board's Solicitor]: Yes. I don't think there would be any problem with that. We will coordinate the next meeting date.

N.T. 6/29/16 at 90-91, R.R. at 365a-66a. Later during the meeting, the exchange continued:

[Board's Solicitor]: All right. Any other questions? Anything else for tonight?

[Objectors' Counsel]: Not for tonight. No. I have no further testimony to present tonight. Again, what we had talked about, after I finish with my witness, I will move for my exhibits after I complete here (sic) examination.

[Board's Solicitor]: We'll go back on the record. All right. The meeting will be adjourned then we'll have our next meeting, the final meeting on Monday, July 25th at 7 p.m. Anyone that wants to be here just take note of that. This will not be advertised. This is your legal notice of the next meeting. Hopefully, we'll have time to deliberate and make a decision.

N.T. 6/29/16 at 143, R.R. at 418a.

Unlike the record in *Wistuk*, the record in this matter does not indicate that the evidentiary record was closed at the June 29, 2016 meeting. Rather, it is clear that the evidentiary record was left open and the intent of continuing the June

9

29, 2016 hearing to July 25, 2016 was to hear the testimony of the expert witness who could not be present at the June 29, 2016 hearing. There was no disagreement among the parties at the June 29 hearing that the evidentiary record would remain open and that further testimony would be taken at the July 25 proceeding. In fact, the Board's chairman even stated that he hoped that "we'll have time to deliberate and make a decision." N.T. 6/29/16 at 143, R.R. at 418a. If the purpose of the July 25, 2016 proceeding was only for deliberation and vote, as in *Wistuk*, the Board's chairman would not need to "hope" for time to deliberate and vote.

On July 25, the proceeding was convened, a stenographer was present taking down the record, and a continuance request was made on the record so that testimony could be postponed from the July 25 date and heard, instead, at a continued meeting on August 24 due to the continued illness of the planned witness. Even the Board's solicitor believed the record was not closed at the prior June 29 hearing and that the July 25 proceeding was a hearing. This is confirmed by the exchange on the record during the July 25 proceeding:

> [Board's Solicitor]: Okay. We're reconvening again. This is our third *hearing*. I believe. A *continuation of the last proceeding* which adjourned on June 29[]. . . . And I believe that there is just going to be a couple items marked of record . . . .
>
> [Objectors' Counsel]: Good evening, gentleman. *It's still my case.* When we were here back on June 29[], I had advised the [Board] that unfortunately our key witness[,] Ms. DiMagno[,] was diagnosed, I believe, the day before with shingles. And we remained hopeful that she would be here, present this evening to offer testimony.
> And we had deferred today - - we had ended last month, late June, slightly early after we presented, I'll say, some lay witness testimony.

Mr. Solicitor, I'd ask to mark two exhibits. I don't know where we left off. And so I'd just ask that they be marked sequentially. The next exhibit would be the letter I wrote to yourself on July 13, 2016. I faxed to both you and [Applicant's Counsel], enclosing a copy of Ms. DiMagno's physician's note indicating that - - it's a note from Hershey Medical Center that she is out of work for a total of five weeks, an additional four weeks. And that's dated July 13[]. And that's part of the facsimile that was sent to yourself and [Applicant's Counsel].

. . .

And on the next exhibit, next number, is Ms. DiMagno's eight or nine page résumé setting forth her qualifications.

. . .

But officially[,] I would ask again to continue this hearing to afford my client[s] an opportunity to present their expert testimony in what we believe is an important case. . . .

N.T. 7/25/16 at 4-7, R.R. at 438a-41a (emphasis added). Additionally, during the July 25, 2016 meeting, Objectors' counsel made an offer of proof on the record, stating that, relative to the expert's testimony, Objectors planned:

to offer testimony regarding the waste management. To offer testimony regarding the plant. To offer testimony regarding the egg wash plant process. To offer testimony regarding both, I believe, are lay witnesses that were presented by the [A]pplicant and to refute that testimony.

N.T. 7/25/16 at 8, R.R. at 442a.

This Court has recognized that a hearing is more than just a proceeding in which to take testimony or other substantive evidence. In *Gaster v. Township of Nether Providence,* 556 A.2d 947 (Pa. Cmwlth. 1989), the applicants submitted an application for approval of a mobile home park on their property. *Id.* at 948. The zoning board held 14 hearings on the matter. *Id.* At a hearing held on June 8, 1987,

11

testimony was completed and both parties agreed that the record would remain open until July 13, 1987 for the zoning board to question the attorneys. *Id.* On July 13, 1987, oral arguments were heard. *Id.* The board denied the application on August 10, 1987, with a written decision issued on August 11, 1987. *Id.* Subsequently, the applicants filed a complaint in mandamus to enforce a deemed approval pursuant to Section 908(9) of the MPC, 53 P.S. § 10908(9). *Gaster*, 556 A.2d at 947. The applicants argued that the last hearing date was June 8, 1987, when testimony was last received, and not July 13, 1987, when the zoning board heard oral arguments. *Id.* at 949. This Court affirmed the holding of the common pleas court that the term "hearing" includes specially scheduled sessions for argument by counsel. *Id.* at 949-50. In doing so, we cited Section 908(5) of the MPC, 53 P.S. § 10908(5), which provides: "The parties shall have the right to be represented by counsel and shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." *Gaster*, 556 A.2d at 949 (emphasis omitted). Accordingly, we agreed that the last hearing date in the context of Section 908(9) was July 13, 1987. *Id.* at 950.

Similarly, in *Hogan, Lepore & Hogan v. Pequea Township Zoning Board,* 638 A.2d 464 (Pa. Cmwlth.), *appeal denied,* 647 A.2d 905 (Pa. 1994),[11] this Court considered whether a deemed approval occurred when the zoning board issued its decision within 45 days after hearing oral argument, but more than 45 days after the last evidentiary hearing. In that case, the applicant applied for a special exception to use its property as a quarry. *Id.* at 466. The zoning board held 26 evidentiary

---

[11] We recognize that in *Wistuk*, our Supreme Court disapproved of this Court's decision in *Hogan*. However, such disapproval was limited to our holding that a party's acquiescence in a board's meeting to entertain written briefs, deliberate, and render a decision waived or estopped that party from asserting statutory entitlement to a deemed approval of requests. *See Wistuk*, 925 A.2d at 774. Our opinion does not rely on *Hogan* for this proposition.

12

hearings between January 30, 1990 and July 23, 1991. *Id.* at 467. At the July 23, 1991 hearing, the zoning board consulted with the parties and, with no objections, established dates for additional hearings if necessary. *Id.* at 467. At the end of the hearing on July 23, 1991, the zoning board closed the record and indicated that the parties would be given an opportunity to make oral arguments on September 19, 1991, the next hearing date selected by the parties. *Id.* The zoning board held oral arguments as scheduled and later rendered a written decision denying the special exception on October 28, 1991. *Id.* The applicant asserted that it was entitled to a deemed approval under Section 908(9) of the MPC, arguing that the date of the last board hearing was July 23, 1991. The applicant based its argument on the fact that the zoning board closed the record of testimony on that date, and further argued that the September 19, 1991 hearing was unnecessary and that the zoning board could not unilaterally reconvene on that date and thereby reset the 45-day period. *Id.* at 467-68. Our Court disagreed. *See id.* at 469. We concluded that, given the extensive record, the number of prior hearings, and the complexity of the issues, the zoning board did not abuse its discretion in fixing a separate hearing solely for the purpose of considering that parties' legal arguments and counsels' summations. *Id.* at 468. We stated that Section 908(5) of the MPC specifically contemplates parties making oral argument at hearings before zoning hearing boards, and, despite the zoning board's earlier closing of the record, we relied on *Gaster's* holding that "oral argument constitutes a hearing for Section 908(9) purposes." *Hogan,* 638 A.2d at 468.

Turning back to *Wistuk*, now retired Judge Friedman, in her dissenting opinion in this Court's decision in that case, with which the Supreme Court agreed, distinguished the facts in *Wistuk* from those in *Gaster* and *Hogan*. In concluding

13

that the *Wistuk* board's October 22, 2003 proceeding was not a hearing, Judge Friedman noted that the record in *Wistuk*, unlike the records in *Hogan* and *Gaster*, "establishe[d] that the [b]oard met on October 22, 2003, *solely for the purpose of deliberation and voting*." *Wistuk*, 887 A.2d at 350 (Friedman, J., dissenting) (emphasis added). The facts distinguishing *Hogan* and *Gaster* are not present in this matter. Consequently, this Court's analysis should be guided by *Hogan* and *Gaster* rather than *Wistuk*.

Further, we disagree with Applicant's assertion that the July 25 meeting was solely to deliberate on Objectors' continuance request that was submitted prior to the meeting. *See* Applicant's Brief at 14. The evidentiary hearing of July 25 was scheduled at the June 29 meeting. N.T. 6/29/16 at 143, R.R. at 418a. On July 13, Objectors' counsel sent a letter to the Board notifying the Board that Objectors' expert witness would not be available on July 25 due to medical reasons, and requested a continuance. *See* N.T. 7/25/16 at 5-6, R.R. at 439a-40a; Objectors' Ex. 3, R.R. at 773a-74a.

We acknowledge our unreported decision of *Q & D, Inc. v. Board of Commissioners of Township of Haverford* (Pa. Cmwlth., No. 1207 C.D. 2006, filed April 16, 2009), which is of persuasive value only. *See* Commonwealth Court Internal Operating Procedures § 414(a), 210 Pa. Code § 69.414(a). Moreover, that case is distinguishable. In *Q & D*, an examination of the record revealed that the zoning board was polled in advance and the consensus was that the matter would be continued on January 15, 2004, the scheduled hearing date, to the next available date, and the parties were told ahead of time that the continuance would be granted, as neither parties' counsel appeared at the hearing, nor did counsel representing the township. *Id.*, slip op. at 3-4. Here, unlike *Q & D*, no decision was made prior to

14

the July 25 meeting that the hearing would be continued. Instead, all parties and counsel appeared as scheduled on July 25, knowing that they had to be prepared to proceed. *See* N.T. 7/25/16 at 1-23, R.R. at 435a-57a. The record was opened, counsel for Objectors began by announcing that it was the continuation of his case, and he later made the request for a continuance. N.T. 7/25/16 at 5 & 7, R.R. at 439a & 441a. Additionally, Objectors' Counsel offered two exhibits: (i) his letter of July 13 requesting the continuance and enclosing a medical note from the expert's physician, also dated July 13, indicating the expert would be disabled for five weeks; and (ii) the expert's résumé. N.T. 7/25/16 at 5-8, R.R. at 439a-42a. Notably, these two exhibits were introduced without objection from opposing counsel. N.T. 7/25/16 at 8, R.R. at 442a. Under the MPC, a hearing occurs where there is an opportunity to respond and present evidence and argument. *See* Section 908(5) of the MPC, 53 P.S. § 10908(5); *Gaster*, 556 A.2d at 949-50 (noting that Section 908(9) of MPC provides parties with opportunity to present evidence and argument and holding that Section 908(9) of MPC does not limit the term "hearing" to proceedings where board receives substantive evidence); *see also Hogan*, 638 A.2d at 468 (discussing holding in *Gaster*). Thus, this proceeding could not have been simply a meeting but, rather, was a hearing. *See* Section 908(5) of the MPC, 53 P.S. § 10908(5) (stating that requirements for a hearing include the opportunity to present evidence).

Further, we note that considerations as to the amount of evidence offered, whether the evidence resolves the ultimate issue in the case, and the length of the time of the proceeding are not dispositive of whether an event constitutes a hearing. Moreover, even if these exhibits do not resolve the ultimate issue in the case, the exhibits are relevant. An expert's résumé detailing the expert's credentials

15

would certainly be relevant to the weight the Board would afford that testimony. *Cf. Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1218-19 (Pa. Cmwlth. 2011) (stating, "[e]vidence is relevant if it logically tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact[]"); *Crystal Forest Assocs., LP v. Buckingham Twp. Supervisors*, 872 A.2d 206 (Pa. Cmwlth. 2005) (relying on expert's testimony and his curriculum vitae to determine that witness was an expert in area of real estate development and financing). The Board has wide latitude in determining what evidence to admit as relevant. *See Joseph*, 16 A.3d at 1219 (stating that administrative agencies have broad discretion to admit or exclude evidence).

Nonetheless, Applicant argues that the trial court erred as a matter of law by accepting the Board's decision to grant a continuance over Applicant's objection. Applicant's Brief at 14. In response to Applicant's opposition, Objectors' Counsel noted on the record that the July 25 date was originally selected to try to "fit in the final hearing before the planning commission meeting" that was originally scheduled for the end of the same week (a meeting that was later postponed). N.T. 7/25/16 at 15-16, R.R. at 449a-50a. At the July 25, 2016 proceeding, a vote was taken of the Board and the continuance request was granted. N.T. 7/25/16 at 20-21, R.R. at 454a-55a. The Board very deliberately chose a date within 45 days of the July 25 date, August 24, 2016, and noted that the August 24 hearing would "close the record[.]" *See* N.T. 7/25/16 at 22, R.R. at 456a.

The fact that Applicant's Counsel did not agree with the grant of the continuance and preserved his objection for later review does not mean that the continuance should not have been granted or that Applicant is entitled to a deemed approval. It simply means that Applicant has not waived his ability to raise an

16

argument that he is entitled to a deemed approval. *See Wistuk*, 925 A.2d at 774 (holding applicant's acquiescence to board's meeting for deliberation and decision did not waive or estop applicant from claiming entitlement to deemed approval).

While recognizing the time constraints within which a zoning board must reschedule hearings, the decision itself to continue the hearing was within the discretion of the Board. *See Bass v. Zoning Bd. of Adjustment of City of Phila.* (Pa. Cmwlth., No. 2179 C.D. 2013, filed Aug. 12, 2014), slip op. at 3 (stating it is within tribunal's discretion whether to grant continuance request); *cf. Hogan*, 638 A.2d at 468 (finding board did not abuse its discretion in fixing separate hearing solely for purpose of considering legal argument). There is nothing in the record to support any abuse of discretion in granting the continuance. After granting the continuance, the Board's Solicitor explained that the Board was concerned about due process and that the Board wanted to hear fully both sides of the case. N.T. 7/25/16 at 21, R.R. at 455a.

Therefore, for the foregoing reasons, we find no error in the trial court's determination that Applicant was not entitled to a deemed approval.[12]

---

[12] The Court cautions that our determination regarding the lack of a deemed approval in this matter is strictly limited to the specific and unique facts herein. Upon a close review of these facts, coupled with the relevant statutory language set forth in Section 908 of the MPC, the Court concludes that the July 29 proceeding herein constitutes a "hearing" by the narrowest of margins. While the facts of this particular case are distinguishable from those presented in *Wistuk*, this opinion upholds the statutory requirements as stated in *Wistuk*, specifically, that "[e]ach subsequent hearing before the board . . . shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record," and a deemed approval will result "where the board fails to render the decision" within 45 days after the last hearing. *See* 53 P.S. § 10908 (1.2), (9). Furthermore, this Court does not condone gamesmanship, and while we do not believe that the same occurred herein, we take this opportunity to discourage and caution against such actions.

## NMA and Special Exception

"Generally speaking, '[a] special exception is not an exception to a zoning ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community.'" *Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018) (quoting *Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65, 70 (Pa. Cmwlth. 1991)). "The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met." *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980). To satisfy its burden for a special exception, an applicant must establish that the proposed use meets "the specific objective criteria of the [z]oning [o]rdinance." *JoJo Oil Co., Inc. v. Dingman Twp. Zoning Hearing Bd.*, 77 A.3d 679, 687 (Pa. Cmwlth. 2013). "These definite criteria are in contrast to the general, non-specific or non-objective requirements such as health and safety." *Id.* at 688. Once the applicant establishes compliance with the specific criteria, it is presumed that the use is consistent with the promotion of the public health, safety and welfare. *Blancett-Maddock v. City of Pittsburgh Zoning Bd. of Adjustment*, 6 A.3d 595, 600 (Pa. Cmwlth. 2010). The burden then shifts to the objectors to prove "to a high degree of probability that the impact from the proposed use will substantially affect the health, safety and welfare of the community to a greater extent than would be expected normally from that type of use." *Id.*

Applicable to Applicant's special exception application is Section 1615 of the Zoning Ordinance, which sets forth "Intensive Agricultural Standards" and

applies to an intensive agricultural use.[13]  *See* Zoning Ordinance § 1615, R.R. at 119a-22a.  Also applicable is Section 2002(C) of the Zoning Ordinance, entitled "Special Exceptions," which governs all special exceptions.  *See* Zoning Ordinance § 2002(C), R.R. at 128a.

Applicant argues that the Board abused its discretion by establishing additional requirements that are not present in the Zoning Ordinance.  Applicant asserts the Board improperly applied criteria preempted by the NMA, in particular, standards regarding flies, odor, and the application and runoff of egg wash water.  Applicant's Brief at 16.  Applicant argues the Board referenced the impact of runoff of egg wash water and its effects on nearby water sources, the odors associated with egg wash water, and the fact that egg wash water attracts flies and rodents.  Applicant asserts as soon as egg wash water is applied to land, it is a nutrient governed by the NMA.  Applicant's Brief at 17.  Therefore, the management of egg wash water, including its odor and runoff impacts, is governed by the NMA.  *Id.*  Applicant contends that, regardless of the Board's concerns about these matters, it satisfied all possible requirements related to egg wash water by complying with the NMA, and the Board's efforts to impose additional standards on Applicant on these issues was a clear error of law.

---

[13] Section 1615's criteria applicable to Applicant's proposed used are setback requirements, an approved nutrient management plan, a stormwater management plan, an approved land development plan, an approved erosion and sedimentation plan, an approved conservation plan and a landscaping plan, as well as requirements related to the management of solid and liquid wastes, fly and odor abatement and animal storage facilities. Zoning Ordinance § 1615(E), (K)-(U), R.R. at 120a-22a; *see* Applicant's Brief at 20-23.  Subsections (C) and (D) establish the threshold of AEUs that require a special exception, and Applicant does not dispute it needs a special exception for its proposed use.  *See* Zoning Ordinance § 1615(C)-(D), R.R. at 120a; Applicant's Brief at 20 n.3.  Subsections (A) and (B) are general background.  *See* Zoning Ordinance § 1615(A)-(B), R.R. at 119a-20a; *See* Applicant's Brief at 20 n.3.

Applicant also raises the related contention that it was entitled to a special exception because it satisfied (or will, through the land development process, satisfy) each of the special exception criteria set forth in Section 1615 of the Township's Zoning Ordinance related to "Intensive Agricultural Standards." Applicant's Brief at 20-23. Applicant argues that once it satisfied each of the objective standards for a special exception in the Zoning Ordinance, the burden shifted to Objectors to rebut the presumption that the proposed use is consistent with the health, safety and welfare of the community. *See* Applicant's Brief at 18 & 23. Applicant argues that Objectors failed to satisfy their burden relative to the subjective inquiry related to health, safety and welfare (which are set forth in Section 2002(C)) because (i) their objections were speculative and, therefore, did not show a high degree of probability that the proposed use will substantially harm the health, safety and welfare of the surrounding area; and (ii) Objectors failed to show the impact was greater than any other similar permitted uses. *See* Applicant's Brief at 23-24.

Section 519 of the NMA titled, "Preemption of local ordinances," states, in its entirety:

> **(a) General.**—This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management and odor management, to the exclusion of all local regulations.
>
> **(b) Nutrient management.**—No ordinance or regulation of any political subdivision … may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by this chapter if the municipal

20

ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

**(c) Odor management.**—No ordinance or regulation of a political subdivision … may regulate the management of odors generated from animal housing or manure management facilities regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

**(d) Stricter requirements.**—Nothing in this chapter shall prevent a political subdivision … from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of this chapter and the regulations or guidelines promulgated under this chapter. No penalty shall be assessed under any such local ordinance or regulation under this subsection for any violation for which a penalty has been assessed under this chapter.

3 Pa.C.S. § 519. Recently, our Supreme Court addressed the preemptive effect of Section 519 of the NMA and held, "viewed in its entirety, Section 519 of the NMA reveals the Legislature's intent to prohibit local regulation of nutrient management only to the extent that it is more stringent than, inconsistent with, or in conflict with the [NMA] or its regulations." *Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 248 (Pa. 2019) (*Berner II*).

Here, Applicant does not identify any specific conflict between the NMA or its regulations and the Zoning Ordinance. Further, we note that Applicant states in its reply brief that the Board "was never asked to rule on whether its ordinance was preempted." Applicant's Reply Brief at 3. Rather, Applicant's argument is that the Board imposed standards, in particular, standards regarding flies, odor, and the application and runoff of egg wash water, that were preempted

by the NMA. Applicant's Brief at 15-16. However, we need not reach this argument because we conclude that Applicant failed to meet an objective criterion set forth in the Zoning Ordinance, unrelated to flies, odor, and the application and runoff of egg wash water, and, therefore, failed to establish, in the first instance, that it was entitled to a special exception for the proposed use.

Initially, we recognize that in *Berner II*, our Supreme Court held that a zoning provision for a special exception for hog raising that required the applicant to show that the use would not have adverse impacts was preempted by the NMA. *Berner II*, 217 A.3d at 248-49. However, that is not what we have here. In *Berner II*, regardless of which party had the burden of proof, the provision allowed the zoning hearing board to determine the adverse impact or the effect of the use, which the Supreme Court held was preempted by the NMA. In other words, the NMA preempts any adverse effect from the use. This is different than the question of whether one has the right to have the use in the first instance, particularly, where, as will be explained here, the criterion at issue relates to the adequacy of services and utilities, a subject not within the purview of the NMA.

We are mindful that a use by special exception is legislatively allowed *if the standards are met*. *Bray*, 410 A.2d at 911. This Court has explained, "the applicant has both the initial evidence presentation duty and the persuasion burden to show that the proposed use complies with the specific requirements in the zoning ordinance which govern the grant of a special exception. *Bray*, 410 A.2d at 912-913. In other words, the standards are, in effect, prerequisites to a permitted use, and the use is not permitted unless the applicant first meets all of the specific, objective requirements set forth in the zoning ordinance for a special exception. *See id.* at 911. The question of whether an ordinance provision regarding a special

22

exception is an "objective" or "subjective" requirement involves statutory interpretation. *Siya Real Estate LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1156 (Pa. Cmwlth. 2019). As such, it is "'a question of law, for which our standard of review is de novo, and our scope is plenary.'" *Id.* at 1156-57 (quoting *Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp., Cambria Cty.*, 32 A.3d 587, 592 (Pa. 2011)).

The parties do not dispute that Section 1615(D) of the Zoning Ordinance requires a special exception for Applicant's Intensive Agricultural Use. *See* Zoning Ordinance § 1615(D). With respect to Applicant's arguments that it presented sufficient evidence that it satisfied (or will, through the land development process, satisfy) Section 1615 of the Zoning Ordinance, we note that the Board did not deny Applicant's special exception application on the grounds that Applicant did not satisfy Section 1615's criteria. Rather, the Board focused on the special exception criteria set forth in Section 2002(C) of the Zoning Ordinance, which are applicable to all special exceptions.

Section 2002(C) states:

The granting of a special exception when specifically authorized by the terms of this [Zoning] Ordinance shall be subject to the following standards and criteria:

1. Such use shall be one which is specifically authorized as a Special Exception Use in the zoning district wherein the applicant seeks a special exception.

2. Such Special Exception shall only be granted subject to any applicable condition and safeguards as required by this [Zoning] Ordinance.

3. Such use shall not adversely affect the character of the zoning district, nor the conservation of property values,

23

nor the health and safety or [sic] residents or workers an [sic] adjacent properties and in the general neighborhood.

4. Such use shall be of such size and so located and laid out in relation to its access streets that vehicular and pedestrian traffic to and from such use will not create undue congestion or hazards prejudicial to the general neighborhood.

5. Such use shall not conflict with the direction of building development in accordance with and [sic] Comprehensive Plan or portion thereof which has been adopted by the Municipal Governing Body; and

6. Services and utilities are available to adequately service the proposed use.

Section 2002(C)(1)-(6) of the Zoning Ordinance.

Relevant here is the Zoning Ordinance's special exception requirement that "[s]ervices and utilities are available to adequately service the proposed use." Zoning Ordinance § 2002(C)(6). We recognize the Board concluded that services and utilities are available to adequately service the proposed expansion of Applicant's Intensive Agricultural use. Board's Decision, Discussion ¶ Q. However, the Board made no findings to support this conclusion. Specifically, the Board found:

> 1. [Applicant's] two (2) well water reports, concerning two (2) wells which were drilled within a period of approximately two (2) days of each other on the [Property], reflect a thirty (30) minute yield test on each well, and not forty-eight (48) hour yield tests, as is the industry standard for commercial applications;

24

2. [Applicant] did not proffer sufficient evidence through documentation, testimony or otherwise to permit the [Board] to determine the proposed water consumption and/or water use rates;

3. Specifically, [Applicant] failed to account for additional water consumption and/or water use as a result of wash water to be applied to eggs delivered from locations other than the farm located on or in the immediate vicinity of the [Property];

4. [Applicant] did not proffer sufficient evidence through documentation, testimony or otherwise to permit the [Board] to determine whether the two (2) aforesaid wells draw from the same aquifer[.]

F.F. ¶ W(1-4). Contrary to the Board's ultimate conclusion, these findings support only the conclusion that, with respect to water, Applicant did *not* present sufficient evidence for the Board to make a determination as to the adequacy of the services and utilities as they relate to water.

Initially, we note the NMA has requirements regarding addressing practices to prevent surface water and groundwater pollution, as well as stormwater run-off. *See* 25 Pa. Code § 83.311 (regarding manure management practices to prevent surface water or groundwater pollution); 25 Pa. Code § 83.321 (regarding stormwater control); *Office of Att'y Gen. ex rel. Corbett v. E. Brunswick Twp.*, 980 A.2d 720 (Pa. Cmwlth. 2009) (noting NMA addresses effect of nutrient application on surface and ground water quality, which necessarily referred to post-application soil and water quality). There are also requirements related to proximity to (*i.e.,* setbacks from) bodies of water. *See* 25 Pa. Code § 83.351(a)(2). However, there are no requirements related to the adequacy of the water servicing the proposed use. Nor do the Board's findings relevant to our analysis relate to an adverse impact. As

25

such, the Zoning Ordinance's requirement regarding adequacy of services of utilities is not in conflict with the NMA, and, applying our Supreme Court's holding in *Berner II*, we do not deem it to be preempted by the NMA.[14]

We turn back, then, to the Board's findings and whether they support the Board's conclusion regarding the adequacy of the services and utilities as they relate to water. Although Applicant argues it satisfied its burden and, therefore, the burden shifted to Objectors, we disagree. Establishing the availability of adequate services and utilities are generally regarded as specific, objective requirements. *See, e.g., Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187-88 (Pa. Cmwlth. 2007) (stating applicant had to meet standard to establish that there were adequate services and utilities, in particular, public sewage capacity, for permitted use). This is especially so where, as here, the knowledge of the specific details related to the use requirements are within the realm of the applicant. *See Berner v. Montour Twp. Zoning Hearing Bd.*, 176 A.3d 1058, 1072-

---

[14] We acknowledge what is commonly known as the Water Resources Planning Act (WRPA), 27 Pa.C.S. §§ 3101 – 3136, although not addressed by the parties. The WRPA contains a preemption provision that provides, "no political subdivision shall have any power to allocate water resources or to regulate the location, amount, timing, terms or conditions of any water withdrawal by any person." 27 Pa.C.S. § 3136(b). Subsection (c) further provides, in part: "Nothing in subsection (b) shall affect the power of any municipality to adopt and enforce ordinances pursuant to 35 Pa.C.S. Pt. V (relating to emergency management services) or regulate the use of land pursuant to the [MPC] or other laws." 27 Pa.C.S. § 3136(c). The Zoning Ordinance provision at issue here does not purport to do any of these prohibited actions, *i.e.*, it does not allocate water resources or regulate water withdrawal. *See Office of Att'y Gen. ex rel. Corbett v. Locust Twp.*, 49 A.3d 502, 513 (Pa. Cmwlth. 2012) (stating that in order to determine whether a local ordinance is preempted by the WRPA, the court must first determine whether the ordinance attempts to allocate water resources or regulate water withdrawal, and if it does, then the ordinance's provision must fall within a permissible exception or it is preempted). Rather, the Zoning Ordinance provision here simply requires the applicant to address the adequacy of water services. *Cf. Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 188-89 (Pa. Cmwlth. 2007) (ruling that determination as to whether there was adequate public sewage capacity for permitted use was not an attempt to impose requirement that applicant allocate available sewer capacity, although case did not involve WRPA).

26

73 (Pa. Cmwlth. 2018), *rev'd on other grounds*, *Berner II* (finding required submissions to be specific requirement where, in addition to other reasons, items would be in primary control of applicant). As such, the burden for this element was on Applicant. *See Bray*, 410 A.2d at 911.

We recognize that this Court has stated that zoning regulates the use of land, not the particulars of development and construction, and that, therefore, typically an application for a special exception need not address the issues of adequate sewage capacity, storm water management or water supply requirements. *Schatz v. New Britain Twp. Zoning Hearing Bd. of Adjustment*, 596 A.2d 294 (Pa. Cmwlth. 1991). However, where a zoning ordinance provision requires that the adequacy of such items be addressed, a special exception can be denied if the applicant fails to establish that it can meet the requirements. *See Greth*, 918 A.2d at 186 (holding, "where the provision of sewage capacity is specifically required by the zoning ordinance, a special exception can be denied if the applicant fails to establish that it can meet the sewage treatment requirements"); *E. Manchester Twp. Zoning Hearing Bd. v. Dallmeyer*, 609 A.2d 604, 608 (Pa. Cmwlth. 1992) (holding that zoning ordinance requirement "that all mobile homes be supplied with a 'continuing supply of safe and potable water as approved by the [Department of Environmental Protection]' is permissible insofar as the [z]oning [b]oard only considers whether the applicant can supply sufficient potable water to the proposed development").

Here, Applicant's expert Moncavage testified that water is needed to, among other things, wash the eggs. N.T. 6/1/16 at 71, R.R. at 199a. Therefore, water is a service necessary for the proposed use. Applicant did not present any evidence regarding the provision of a public water service to the Property. Rather,

Applicant's expert Moncavage testified that two wells service the Property. N.T. 6/1/16 at 73, R.R. at 201a. Consequently, Applicant needed to establish the adequacy of this service. *See* Zoning Ordinance § 2002(C)(6); *Cf. Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935, 942 (Pa. Cmwlth. 2009) (holding that, although ordinance defined "essential services" as "public utility facilities . . ." such services could be provided by an individual and allowed for a wind turbine that would service just a single private home).

Although Applicant argued, at oral argument held before the Court en banc, that nothing in the Zoning Ordinance requires a well test, an ordinance need not micromanage the manner in which an applicant must meet its burden. The Zoning Ordinance requires that the services and utilities be adequate to service the proposed use. How, or the manner in which, an applicant establishes that it meets this requirement is up to the applicant in terms of the evidence it chooses to present. In weighing the evidence, the Board rejected Applicant's expert evidence on the well test, relying on Objectors' expert testimony pointing out the insufficiency of the well tests according to industry standard for commercial applications. *See* F.F. ¶ W(1); *see also Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005) (stating it is zoning hearing board's function to weigh evidence).

Additionally, and importantly, the Board observed that Applicant did not proffer sufficient evidence to allow the Board to determine the proposed use's water consumption/water use rates. Board's Decision at 6, F.F. ¶ W(2). In particular, the Board found that Applicant failed to account for the additional water consumption/water use that would be required for wash water to be applied to eggs delivered from locations other than the farm located on or in the immediate vicinity

28

of the Property. Board's Decision at 6, F.F. ¶ W(3). In short, Applicant's evidence did not match the true extent of the proposed use.

Further, the Board's findings relative to the insufficiency of Applicant's evidence regarding the adequacy of the water servicing the proposed use are supported by the record. Specifically, Applicant's expert Moncavage testified that water is used in the facility for the following: as drinking water for the birds; to wash eggs and equipment, and by the employees. N.T. 6/1/16 at 71, R.R. at 199a. Additionally, Heisler admitted that he imports eggs to wash at the Property and that this was not mentioned in his zoning application. N.T. 6/29/16 at 77-78, R.R. at 352a-53a. Heisler also acknowledged that the more eggs that are processed, the more water that is used. N.T. 6/29/16 at 78, R.R. at 353a. Objectors' expert, DiMagno, testified that she did not see in the numbers submitted to the Board any reference to eggs from third parties brought to the Property to be washed, which would impact the water usage. N.T. 8/24/16 at 25-26, R.R. at 487a-88a. DiMagno further testified that she was not aware of Applicant submitting any water adequacy study, so she had concerns "as to exactly what is the water usage and water consumption for this facility." N.T. 8/24/16 at 22-23, R.R. at 484a-85a. By failing to accurately and adequately account for the true extent of the proposed use and, consequently, the water required for such use, Applicant failed to proffer sufficient evidence to allow the Board to determine whether the services and utilities would be sufficient for the use. *See Elizabethtown/Mt. Joy Assocs., L.P. v. Mount Joy Twp. Zoning Hearing Bd.*, 934 A.2d 759 (Pa. Cmwlth. 2007) (finding developer failed to demonstrate compliance with ordinance to establish entitlement to special exception where opinions of expert were based on erroneous data and submitted plan did not depict some of the assumptions made by expert or depicted them incorrectly).

29

As such, the Board's decision is legally inconsistent—that is, the Board's finding, supported by substantial evidence, that Applicant did not proffer sufficient evidence to allow the Board to determine the proposed water consumption and/or water use rates, F.F. ¶ W(2), cannot as a matter of law support the Board's conclusion that services and utilities are available to adequately service the proposed use. Therefore, because Applicant failed to proffer sufficient evidence to meet its burden, Applicant failed to establish, in the first instance, that its use was permitted and that it was entitled to a special exception. *See Bray*, 410 A.2d at 911 (stating "applicant must bring the proposal within the specific requirements expressed in the ordinance for the use"). As a result, Applicant never received the presumption that the proposed use is consistent with the health, safety and general welfare of the community, and so the burden never shifted to Objectors. *Blancett-Maddock*, 6 A.3d at 600. Consequently, although the trial court affirmed the Board's determination that Objectors met their burden, and Applicant argues this was error, we do not reach Applicant's arguments in this regard.

Accordingly, we affirm, albeit on other grounds.[15]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[15] "An appellate court is permitted to affirm an order of the trial court on other grounds if the correct result was reached." *Citimortgage, Inc. v. KDR Investments, LLP*, 954 A.2d 755, 756 n.2 (Pa. Cmwlth. 2008).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heisler's Egg Farm, Inc., : 
                    Appellant : 
                     : 
        v. : 
                     : 
Walker Township Zoning Hearing : 
Board and David Bensinger and :   No. 780 C.D. 2017
Margaret Bensinger : 

## O R D E R

Now, this 28th day of May, 2020, the order of the Court of Common Pleas of Schuylkill County, dated May 22, 2017, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

Heisler's Egg Farm, Inc., : 
            Appellant : 
                                     : 
                                     : 
        v. : 
                                     : 
Walker Township Zoning : 
Hearing Board and David Bensinger : No. 780 C.D. 2017 
and Margaret Bensinger : Argued: November 14, 2018 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


DISSENTING OPINION
BY JUDGE COVEY                          FILED: May 28, 2020


Because I believe the Schuylkill County Common Pleas Court (trial court) erred by denying Heisler's Egg Farm, Inc.'s (Applicant) request for a deemed approval based upon the Walker Township Zoning Hearing Board's (ZHB) failure to hold timely hearings in accordance with the Pennsylvania Municipalities Planning Code (MPC),[1] I would reverse the trial court's order and remand the matter to the trial court to remand to the ZHB to grant Applicant's request for a deemed approval pursuant to Section 908(9) of the MPC.

Initially, Section 908(1.2) of the MPC requires:

The first hearing before the [ZHB] . . . shall be commenced within 60 days from the date of receipt of the applicant's application, unless the applicant has agreed in writing to an

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 - 11202.

extension of time. **Each subsequent hearing before the [ZHB] . . . shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record**. An applicant shall complete the presentation of his case-in-chief within 100 days of the first hearing. Upon the request of the applicant, the board or hearing officer shall assure that the applicant receives at least seven hours of hearings within the 100 days, including the first hearing. **Persons opposed to the application shall complete the presentation of their opposition to the application within 100 days of the first hearing held after the completion of the applicant's case-in-chief**. An applicant may, upon request, be granted additional hearings to complete his case-in-chief provided the persons opposed to the application are granted an equal number of additional hearings. Persons opposed to the application may, upon the written consent or consent on the record by the applicant and municipality, be granted additional hearings to complete their opposition to the application provided the applicant is granted an equal number of additional hearings for rebuttal.

53 P.S. § 10908(1.2) (emphasis added). Section 908(9) of the MPC mandates: "**[W]here the board** . . . **fails to commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time**." 53 P.S. § 10908(9) (emphasis added).

Here, the record discloses that, on July 13, 2016, David and Margaret Bensinger's (collectively, Objectors) Counsel faxed Zoning Solicitor Robert S. Frycklund (Solicitor) and Applicant's Counsel a letter "**requesting that the [ZHB] hearing be continued until a later date**[,]" because his "expert, . . . [Serena A.] DiMagno is not available for testimony on Monday, July 25, 2016." Reproduced Record (R.R.) at 773a (emphasis added). Thereafter, at the July 25, 2016 meeting, Objectors' Counsel reiterated:

Between last month's meeting and this month's meeting, obviously, I sent the letter asked [sic] for a continuance. And it's my understanding that [] [A]pplicant opposes any continuance and respectfully requesting [sic] that this [ZHB]-- and you do have the power to grant a continuance until the dates that we're speaking about in August -- and I think those dates, [] Solicitor, were somewhere in late - mid to late August.

August -- I think I have - we had talked about various dates that you were available, myself was available. I don't know if [Applicant's Counsel] participated, at least, giving those dates. But that's what we were working on from July 13th until, I believe, last Thursday or Friday, whenever [] [A]pplicant was opposing our continuance request.

**But officially I would ask again to continue this hearing** to afford my client[s] an opportunity to present their expert testimony in what we believe is an important case. And certainly is going to highlight what we believe are important issues.

R.R. at 440a-441a (emphasis added). Applicant's Counsel opposed the continuance, expounding:

[A]pplicant opposes continuing this until the middle of -- leaving the record open and continue [sic] this until some time in August. Section 908[(1.2)] of the [MPC] says that each subsequent hearing before the [ZHB] or hearing officer shall be held within 45 days of the prior hearing unless otherwise agreed to by the applicant in writing or on the record.

**The dates that we were looking at, I believe, were all out beyond this 45 days**. And as [A]pplicants, we respectfully aren't going to approve this extension of this 45[-]day time.

R.R. at 444a-445a (emphasis added). After going off the record and meeting in executive session, the ZHB unanimously granted the continuance as follows:

[SOLICITOR]: Okay. We're back on the record. Again, we convened for a short -- I think that was about ten minutes. I didn't look at the clock when we left just to discuss Section 908 [of the MPC] and the request for a continuance that's before the [ZHB]. So with that --

AEC - 3

MR. LEIBY: Is there a motion to grant a continuance?

MR. PASSON: Motion.

MR. LEIBY: Motion is made. Is there [a] second?

MR. FARRELL: I'll second it.

MR. LEIBY: All say, aye.

MR. PASSON: Aye.

MR. FARRELL: Aye.

MR. LEIBY: Opposed? Ayes have it. **So a continuance is granted**.

R.R. at 454a-455a (emphasis added).

Applicant's Counsel preserved his objection, stating: "Can I put on the record -- I guess we have to show up for the continuance. **That, on the record, is not a waiver of our rights to have a hearing held within 45 days**. Our participation isn't our consent." R.R. at 455a (emphasis added). The Solicitor responded:

> **Yes**. **You may consider that issue preserved for the record**. Again, we didn't deliberate. We didn't vote back in executive session. But I think it's fair to say that the [ZHB] was concerned for due process. We do want to hear fully both sides of this case. And certainly without the **-- it was outside of the control of [Objectors' Counsel], his client, or any of the opposition that their expert was physically unable to make it tonight**.
>
> And I think just reading Section 908[(1.2)] [of the MPC], we would rather err on the side of caution here and continue it so that we can hear the expert witness.
>
> And it's properly within the 100 days of the first hearing heard after the completion of [] [A]pplicant's case in chief, which we deemed to be tonight. So that would be where the 45 days would run for the next hearing.

> So with that, I think we need to now coordinate a date that we're all going to be available within the next 45 days. And ideally, within the next 30 days.

R.R. at 455a-456a (emphasis added).

*Wistuk v. Lower Mt. Bethel Township Zoning Hearing Board*, 925 A.2d 768 (Pa. 2007), is the only case both parties cite in support of their arguments on the deemed approval issue. Therein, the Pennsylvania Supreme Court held:

> [R]elevant provisions of the [MPC] define the term 'hearing' very broadly, as 'an administrative proceeding conducted by a [zoning hearing] board pursuant to [S]ection 909.1 [of the MPC, 53 P.S. § 10909.1[2]].' [Section 107(b) of the MPC,] 53 P.S. § 10107(b). Section 908 [of the MPC], however, prescribes that a zoning hearing board 'shall conduct hearings and make decisions in accordance with the following requirements,' to include that '[t]he parties shall . . . be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues.' 53 P.S. § 10908(5).

*Wistuk*, 925 A.2d at 775. In determining whether the ZHB meeting at issue was a hearing pursuant to the MPC, the *Wistuk* Court concluded:

> None of these features was attendant to the . . . meeting in this case. Although the [zoning hearing b]oard considered the parties' briefs at the session (which obviously contained 'argument'), the briefs were not presented to the [zoning hearing board at the meeting]; rather, the protocol established by the [zoning hearing b]oard solicitor was that the briefs were to be submitted in advance to him and circulated by him to the [zoning hearing b]oard.

*Id.* Similarly, here, the ZHB merely decided the continuance request that was before it prior to the meeting.

The Majority opines that "[c]ontrary to Applicant's assertion, the facts and circumstances surrounding the 'hearing' in question in *Wistuk*, are not analogous

---

[2] Added by Section 87 of the Act of December 21, 1988, P.L. 1329.

to those found in the instant matter[,]" because whether the record was open or closed on the date of the meeting was an issue in *Wistuk*, but not herein. *Heisler's Egg Farm, Inc. v. Walker Twp. Zoning Hearing Bd.*, ___ A.3d ___, ___ (Pa. Cmwlth. No. 780 C.D. 2017, filed May 28, 2020), slip op. at 6. However, neither the Dissent nor either of the parties in the instant matter assert that the record was closed on July 25, 2016, as that is not an issue before this Court. Rather, the issue before this Court is whether a hearing occurred on July 25, 2016. The Dissent and the parties herein rely upon *Wistuk* for its definition of a hearing, which is clearly applicable to the instant matter.

In contrast thereto, the Majority maintains that *Gaster v. Township of Nether Providence*, 556 A.2d 947 (Pa. Cmwlth. 1989), and *Hogan, Lepore & Hogan v. Pequea Township Zoning Board*, 638 A.2d 464 (Pa. Cmwlth), *appeal denied*, 647 A.2d 905 (Pa. 1994), should guide this Court's analysis. *See Heisler's Egg Farm*, slip op. at 14. In both cases, this Court determined, based upon Section 908(5) of the MPC, that the meetings held for the purpose of closing arguments were in fact hearings. In doing so, the Court based its decisions on Section 908(5) of the MPC's specific language, which expressly provides: "The parties shall have the right to be represented by counsel and shall be afforded the opportunity to respond and present evidence **and argument** and cross-examine adverse witnesses on all relevant issues." 53 P.S. § 10908(5) (emphasis added). Accordingly, argument is squarely within the statute. Thus, *Gaster* and *Hogan* are inapposite.

Here, the Majority claims the Objectors presented evidence, *i.e.*, the continuance request and the expert's resume, thus, the meeting did constitute a hearing under the above definition. However, the continuance request does not "tend to prove or disprove a matter in issue," *Relevant Evidence*, Black's Law Dictionary

(10th ed. 2014), and thus is not "evidence" on the "relevant issues" before the ZHB[3] and as the Dissent defined. 53 P.S. § 10908(5). Further, contrary to the Majority's position, the resume could not be "cross-examine[d]," and thus, no weight could be given thereto. 53 P.S. § 10908(5). Indeed, a resume by itself, like any document, without the opposing party being given the opportunity to challenge the document, is not *relevant evidence* because it does not "tend to prove or disprove a matter in issue." Black's Law Dictionary (10th ed. 2014). Evidence only has value and therefore is relevant to the issue in dispute when there is an opportunity to challenge it. Because Applicant did not have that opportunity, the resume had no evidentiary value. As the Pennsylvania Supreme Court has long since recognized:

> In law, where a controversy is involved, a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially. Studying papers is not a hearing; passing on a report moving across one's desk is not a hearing.

*Unora v. Glen Alden Coal Co.*, 104 A.2d 104, 106 (Pa. 1954). Similarly, the admission of a continuance request and a resume "is not a hearing." *Id.*

Section 908 of the MPC, entitled "Hearings," specifically provides that "[t]he [ZHB] shall conduct hearings and make decisions in accordance [there]with . . . ." 53 P.S. § 10908. Consequently, a hearing is as described therein and continuances are not granted at the discretion of the ZHB as with most agencies,[4] but rather within the confines of the time limits provided within this *sui generis* statute. To use the submission of the continuance request and the resume, which could not be challenged because the witness was unavailable, as the basis for converting a 35-

---

[3] As stated by the Zoning Solicitor, the issue before the ZHB was "the Application of [Applicant] for a special exception." R.R. at 279a.

[4] *See Luzerne Cty. Children & Youth Servs. v. Dep't of Human Servs.*, 203 A.3d 396, 398 (Pa. Cmwlth. 2019) ("The grant or refusal of a continuance rests in the discretion of the . . . administrative agency to which the application is made[.]").

minute meeting into a hearing where mandatory statutory deadlines exist and where a hearing could have been scheduled before the date of such deadline, is in contravention of the General Assembly's clear intent and precedent as well as condones the "gamesmanship" the courts have rigorously opposed.

In *Q & D, Inc. v. Board of Commissioners of Haverford Township* (Pa. Cmwlth. No. 1207 C.D. 2006, filed April 16, 2009),[5] this Court, relying upon *Wistuk*, determined that a continuance request was not a hearing for purposes of Section 908 of the MPC. Specifically, the *Q & D* Court explained:

> A review of the transcript of the proceeding before the [z]oning [h]earing [b]oard on January 15, 2004, reveals that the same was not a hearing. **It is clear that the [z]oning [h]earing [b]oard's only intention on January 15, 2004, <u>with respect to Q & D's zoning application</u>, was to consider a request for a continuance by the Township's newly[-]appointed counsel, Attorney Lynch**. The transcript shows that the [z]oning [h]earing [b]oard received, in advance of the January 15, 2004, proceeding, a letter dated January 13, 2004, from Attorney Lynch wherein he requested a continuance of the matter to the next available zoning hearing so that he could properly prepare for the case. The transcript further shows that the [z]oning [h]earing [b]oard had also received in advance a letter from Q & D's counsel, Attorney Quinn, and that the [z]oning [h]earing [b]oard was under the impression that Attorney Quinn did not oppose a continuance. As such, since the [z]oning [h]earing [b]oard members did not object, the Chairman of the [z]oning [h]earing [b]oard recommended that the matter be continued until February 5, 2004. After Zoning Officer Hanlon-Widdop informed the [z]oning [h]earing [b]oard that Attorney Quinn was not available on February 5, 2004, and therefore suggested that the hearing be continued until February 19, 2004, the [z]oning [h]earing

---

[5] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[b]oard, without objection, continued the case to February 19th.

**There is no indication in the transcript that the [z]oning [h]earing [b]oard had any intention during the proceeding on January 15, 2004, to afford the parties the opportunity to respond, present evidence and argument and cross-examine adverse witnesses on all relevant issues**. Moreover, the record reveals that the members of the [z]oning [h]earing [b]oard were polled in advance and the consensus was that the matter would be continued on January 15, 2004, to the next available date. The record further reveals that the parties and their counsel were notified by Zoning Officer Hanlon-Widdop that the continuance would be granted. Accordingly, we conclude that the trial court erred by determining that the proceeding before the [z]oning [h]earing [b]oard on January 15, 2004, was a hearing within the meaning of the MPC.

*Id.*, slip op. at 9-10 (bold and underline emphasis added; record citations omitted).

The Majority attempts to distinguish *Q & D* by stating:

Here, unlike *Q & D*, no decision was made prior to the July 25th meeting that the hearing would be continued. Instead, all parties and counsel appeared as scheduled on July 25th, **knowing that they had to be prepared to proceed**. *See* Transcript [H.T.] 7/25/16 at 1-23, R.R. at 435a-57a. The record was opened, counsel for Objectors began by announcing that it was the continuation of his case, and he **later** made the request for a continuance.

*Heisler's Egg Farm*, slip op. at 14-15 (emphasis added). However, in both cases, the **continuance requests were made in advance**. The only difference herein is that Applicant objected thereto which it was entitled to do. Thus, the purpose of the meeting was to discuss the continuance, not "to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." 53 P.S. § 10908(5). Further, Objectors were not "prepared to proceed" on July 25, 2016, as their only remaining witness was unavailable, nor was there a "continuation of [their] case," as stated by the Majority. *Heisler's Egg Farm*, slip op. at 15. Identical to *Q &*

*D*, "the [ZHB's] only intention on [July 25, 2016], with respect to [Applicant's] [] [A]pplication, was to consider a request for a continuance by [Objectors.]" *Q & D*, slip op. at 9. Accordingly, *Q & D* controls.

The Majority maintains that the submission of DiMagno's resume and Objectors' continuance request transformed the meeting into a hearing on the merits. However, the Dissent agrees with Applicant that those exhibits merely laid the foundation for the continuance request. First, as stated above, the letter wherein the continuance request was made was submitted to the ZHB on July 13, 2016. Thus, there was no need for the submission on July 25, 2016. Moreover, the admittance of DiMagno's resume did not advance the resolution of Applicant's special exception because any objection to DiMagno's qualifications could only be established through voir dire of DiMagno herself, not her resume. *See Anderson v. McAfoos*, 57 A.3d 1141 (Pa. 2012). The resume had no evidentiary value because it could not be challenged, as there was no ability to cross-examine it due to the absence of the witness whose absence was the sole reason for the continuance request. Thus, DiMagno's resume served no evidentiary purpose.

This Court has expounded:

> Recently, our Supreme Court expressed concern over the operation of a deemed decision to the extent it foreclosed merit-based decisions, but felt compelled to apply the clear statutory language. *See Wistuk* . . . , [925 A.2d at] 775 . . . . Also, the Court encouraged solicitors to obtain clear agreements for extension of time on the record. *Id.* at . . . 775[] n.6. Similarly, **this Court is alert for gamesmanship which allows for the disposition of cases on timing issues rather than substantive grounds**.

*Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587, 591 (Pa. Cmwlth. 2008) (emphasis added).

In the instant case, Applicant clearly communicated its objection to the continuance and reason therefor. In response thereto, Objectors had available options, *i.e.*, they could have requested a date on or before August 15, 2016 to be within the required time limit, rested their case laid out on the merits or retained another expert. Instead, Objectors and the ZHB gambled that **the MPC's mandatory provisions would not be upheld**. Objectors and the ZHB employed "gamesmanship" here in their disingenuous argument that the July 25, 2016 meeting was a hearing. *Nextel Partners, Inc.*, 958 A.2d at 591. The ZHB and the parties fully understood the time issue and the consequences of their decisions. Objectors' Counsel suggested at the meeting:

> Here's what I think might happen is, I can honestly see [the] trial court saying to [the ZHB], you didn't permit a witness, you didn't give them a fair shake. Both the [A]pplicant and/or the property owner. And then we're [in a] situation . . . where the [trial court] remands the case back [sic] to you folks to hear testimony.
>
> And I'm not trying to waste your time. I think [Objectors] ha[ve] been very fair and told you folks right away when there was an issue regarding scheduling. And that's why we're here again.
>
> **But ultimately that's your decision. I'm not suggesting that [Applicant's Counsel] is misinterpreting the law. I know the shot clock. I do enough zoning hearing board work. I get it.**

R.R. at 451a-452a (emphasis added). The record leaves no doubt that the ZHB did nothing more than rule on Objectors' previously submitted continuance request.

> As the *Wistuk* Court explained:
>
> We recognize the severity of Section 908(9) [of the MPC], in that it forecloses merits-based decisions concerning land-use matters, which may be of tremendous consequences to local governments and citizens, based on procedural non-compliance by a zoning hearing board. **It is not our task,**

**however, to evaluate the wisdom of this approach or its specific aspects. Rather, where as here there is no constitutional challenge, our function is to apply the law as prescribed by the General Assembly**. On this record, we conclude that it would strain the relevant statutory language to find that the [ZHB's July 25, 2016 meeting] convened solely for purposes of [ruling on Objectors' continuance request] represented a hearing, or, . . . that [Applicant] waived [its] entitlement to a [hearing] within forty-five days after the [previous] hearing on [June 29, 2016].

*Wistuk*, 925 A.2d at 775 (emphasis added).

The Majority concludes:

While recognizing the time constraints within which a zoning board must reschedule hearings, the decision itself to continue the hearing was within the discretion of the [ZHB]. *See Bass v. Zoning Bd. of Adjustment of City of Phila.* (Pa. Cmwlth. No. 2179 C.D. 2013, filed Aug. 12, 2014), slip op. at 3 (stating it is within tribunal's discretion whether to grant continuance request); *cf. Hogan*, 638 A.2d at 468 (finding board did not abuse its discretion in fixing separate hearing solely for purpose of considering legal argument). There is nothing in the record to support any abuse of discretion in granting the continuance. After granting the continuance, the [] Solicitor explained that the [ZHB] was concerned about due process and that the [ZHB] wanted to hear fully both sides of the case. H.T. 7/25/16 at 21, R.R. at 455a.

*Heisler's Egg Farm*, slip op. at 17. Taking the Majority's position to its logical conclusion, the MPC's mandatory time limits would be non-existent. If every time a continuance request is objected to and the record is opened for the purpose of deciding it, it is construed as a hearing, then there would be no need for the General Assembly to have enacted the remedy of deemed approval, because it would never occur. The General Assembly, however, believed the time restraints are so important that it included the remedy of deemed approval with no exceptions. As Applicant stated on July 25, 2016: "To have a hearing to talk about whether to continue a

hearing, that just doesn't seem right." R.R. at 452a-453a. The language of Section 908(9) of the MPC is clear, and it is this Court's duty to uphold the same.

Moreover, the ZHB had a statutory duty to uphold the time limits and notwithstanding that it was squarely confronted with the issue, it chose to walk away therefrom. In fact, when the ZHB had the executive session at the end of the meeting on July 25, 2016, the purpose was to decide whether it would accept Objectors' argument that submitting the continuance request and the resume transformed the meeting into a hearing on the issues. However, when the ZHB returned, it granted the continuance without making such determination.

Most importantly, the Majority asserts a position that this Court has long since rejected:

> In interpreting [Section 908(9) of the MPC], we are mindful of the Pennsylvania Supreme Court's admonishment to apply a strict interpretation of and adherence to the procedural provisions of zoning statutes. *Humble Oil* [&] *Refining Co. v. E*[.] *Lansdowne Borough*, . . . 227 A.2d 664 ([Pa.] 1967). We also note that the use of the word 'shall' in a statute is generally considered imperative. A statute is mandatory if the thing directed to be done reflects the essence of a statute's purpose.
>
> The Pennsylvania Supreme Court, recognizing that initiative, consideration, and decision are commonly controlled by procrastination rather than celerity, stated as follows with regard to the purpose of [Section] 908(9) [of the MPC]:
>
> > The Legislature recognized the existence of this inertia in the orderly disposition of pending governmental matters, and, accordingly, wisely provided that when a board of adjustment indolently allows 45 days to go by without a decision following a hearing, the complaining party shall have the benefit of that slothful inattention and gain the requested permit. **Without this kind of coercive determination, a [zoning hearing] board could effectively prevent the erection of needed**

AEC - 13

> **structures through the simple process of luxurious lolling while spiders of inattention spin webs of indifference over pending public problems**.

*Humble Oil*, . . . 227 A.2d at 666.

> Because *Humble Oil* was decided before the MPC required a hearing within sixty days, that decision addressed only the requirement that the board reach a decision within forty-five days of the last zoning board hearing. **However, the intent of the legislature, as elucidated in *Humble Oil*, remains the same for the entire section as it stands today**. Accordingly, we have recognized that [**Section**] **908(9)** [**of the MPC**] **was designed to curb the evils of procrastination, delay and frustration of decision**. Therefore, <u>**the language of that section which provides that a decision 'shall be deemed to have been rendered in favor of the applicant,' where the [zoning hearing] board fails to hold the required hearing within 60 days, is imperative**</u>.

*Grim v. Borough of Boyertown*, 595 A.2d 775, 779 (Pa. Cmwlth. 1991) (citations omitted; bold and underline emphasis added).

> The *Grim* Court further rebuked the trial court:

> The trial court chose to ignore this mandate and relied on this [C]ourt's decisions in *Price v. Hanover Township Zoning Hearing Board*, . . . 455 A.2d 1267 ([Pa. Cmwlth.] 1983) and *Joseph Ciccone & Sons, Inc. v. Lower Saucon Township Zoning Hearing Board*, . . . 539 A.2d 942 ([Pa. Cmwlth.] 1988), to support the conclusion that deemed approval will not be granted where extenuating circumstances cause a hearing to be held more than sixty days after an applicant files a request, and the [zoning hearing] board conscientiously pursues timely disposition of that request. **This standard is not supported by those cases, exists nowhere in our case law, and is inconsistent with the intent of [Section] 908(9) [of the MPC]**.

*Grim*, 595 A.2d at 779-80 (emphasis added). Similarly, here, the Majority posits that the fact that Objectors' expert was truly unavailable and Objectors requested the

continuance in advance, this Court should ignore the MPC's mandated time constraints. "This standard . . . exists nowhere in our case law, and is inconsistent with the intent of [Section] 908(9) [of the MPC]." *Grim*, 595 A.2d at 779-80. To rule as the Majority suggests would require overruling this precedent.

Finally, the Majority attempts to justify its erosion of the MPC's mandatory time constraints by stating:

> **The Court cautions** that our determination regarding the lack of a deemed approval in this matter is strictly limited to the specific and unique facts herein. Upon a close review of these facts, coupled with the relevant statutory language set forth in Section 908 of the MPC, the Court concludes **that the July 29 proceeding herein constitutes a 'hearing' by the narrowest of margins**. While the facts of this particular case are distinguishable from those presented in *Wistuk*, **this opinion upholds the statutory requirements as stated in *Wistuk*, specifically, that '[e]ach subsequent hearing before the board . . . shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record,' and a deemed approval will result 'where the board fails to render the decision' within 45 days after the last hearing**. *See* 53 P.S. § 10908(1.2), (9). Furthermore, this Court does not condone gamesmanship, and while we do not believe that the same occurred herein, we take this opportunity to discourage and caution against such actions.

*Heisler's Egg Farm*, slip op. at 17 n.12 (emphasis added). The Majority is not upholding *Wistuk* by concluding a hearing "by the narrowest of margins" occurred. *Heisler's Egg Farm*, slip op. at 17 n.12. Rather, the Majority is usurping the General Assembly's authority by creating its own exceptions to the clear statutory mandate; this Court lacks any such power to restate public policy, which herein, the General Assembly has unequivocally pronounced. By finding that a hearing occurred because the expert was truly unavailable and the ZHB was concerned with due process, the Majority has blatantly disregarded the admonishment in *Grim* that the proposition

"that deemed approval will not be granted where extenuating circumstances cause a hearing to be held more than sixty days after an applicant files a request, and the [zoning hearing] board conscientiously pursues timely disposition of that request[,]" **is not supported anywhere in our case law, and is inconsistent with the intent of Section 908(9) of the MPC**. *Grim*, 595 A.2d at 779.

In summary, because Applicant did not agree to the continuance in writing or on the record (indeed, Applicant vehemently objected thereto), and the ZHB is not authorized to ignore the MPC's mandates under the guise of due process, Applicant is entitled to a deemed approval. Accordingly, the Dissent would reverse the trial court's order and remand the matter to the trial court to remand the matter to the ZHB to grant Applicant's request for a deemed approval pursuant to Section 908(9) of the MPC.

_____
ANNE E. COVEY, Judge

Judge McCullough joins in this dissenting opinion.